**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**


Mark W. Wiles,          )  JUDGE PAUL R. MATIA
                            )
        Petitioner,     )
                            )  CASE NO.1:02CV992
        v.              )
                            )
Margaret Bagley, WARDEN,  )  <u>MEMORANDUM OF OPINION</u>
                            )  <u>AND ORDER</u>
        Respondent.     )
                            )

Mark W. Wiles has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Wiles challenges his conviction and sentence of death entered by the Court of Common Pleas of Portage County, Ohio.

For the following reasons, the petition for a writ of habeas corpus is denied.

### I. PROCEDURAL HISTORY

On August 16, 1985, Mark W. Wiles, Petitioner, was indicted on the following three counts: (1) aggravated murder with the  specifications that Wiles was the principal offender in the commission of the murder while committing aggravated

1

burglary in violation of Ohio Revised Code § 2929.04(A)(7) and that Wiles committed the murder for the purpose of escaping detection, apprehension, trial or punishment for another crime; (2) aggravated burglary with the specification that Wiles previously had been convicted of an aggravated felony; and (3) aggravated burglary on or about January 19, 1983.

Wiles filed a motion to sever count three on August 23, 1985.  Wiles next filed a motion to suppress any oral or written statements he previously made to police and a motion for waiver of a jury trial.  A three-judge panel was appointed on December 30, 1985.  After holding a hearing on the motion to suppress, the trial court denied that motion and Wiles's motion to sever Count Three on January 2, 1986.

Trial commenced before a Portage County Common Pleas Court on January 6, 1986.  Following deliberations, the panel found Wiles guilty of counts one and two of the indictment and of the specifications attendant thereto.  The penalty phase of trial began on January 27, 1986.  Upon conclusion of the presentation of mitigating evidence, the panel sentenced Wiles to death.

Wiles filed a timely notice of appeal to the Court of Appeals for the Eleventh Appellate District.  Represented by James J. Aylward, Wiles raised the following eleven

2

assignments of error:

1. The decision of the trial court was erroneously based upon non-statutory aggravating factors in violation of Ohio Revised Code Article I, Sections 9 and 16 of the Ohio Constitution and the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

2. The trial court's failure to consider all evidence presented in mitigation was a violation of appellant's constitutional rights under *Lockett v. Ohio* and *Eddings v. Oklahoma*.

3. The trial court erred by failing to merge the two aggravating circumstances of which appellant was convicted into one for purposes of determining penalty.

4. Death is not the appropriate sentence in this case therefore, pursuant to Ohio Revised Code Section 2929.05(A), and Revised Code Section 2929.06, and the state and federal Constitutions, this death sentence must be vacated and the case remanded for a re-sentencing hearing to determine which life term will be imposed.

5. Upon an independent weighing, it is apparent that the two aggravating circumstances the defendant was found guilty of committing do not outweigh the mitigating factors beyond a reasonable doubt, and therefore, the death sentence cannot be affirmed, pursuant to Revised Code Section 2929.05(A).

6. The proportionality review that this court must conduct in the present capital case pursuant to Ohio Revised Code Section 2929.05 is fatally flawed and therefore the present death sentence must be vacated pursuant to the Eighth and Fourteenth Amendments to the United States Constitution, Article I, Sections 5 and 10 of the Ohio Constitution and Ohio Revised Code Section 2929.05.

7. The trial court erred in its judgment and sentence by failing to comply with Section

3

2929.03(F) of the Ohio Revised Code.

8. Ohio's statutory provisions governing the imposition of the death penalty are unconstitutional under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Sections 2, 9, 10, and 16 of the Ohio Constitution.

9. The mitigating circumstances in Section 2929.04(B) of the Ohio Revised Code are impermissibly vague.

10. The trial court erred in allowing the testimony of a corrections officer during the guilt phase of the trial.

11. The penalty of death is not appropriate in this case.

*Return Appendix*, Vol. III, at 32-35.  On June 3, 1988, the Eleventh District Court of Appeals affirmed Wiles's conviction and sentence.  *State v. Wiles*, No. 1675, 1988 WL 59838 (Ohio Ct. App. June 3, 1988).

Represented by Randall M. Dana, S. Adele Shank, and Nathan A. Ray of the Office of the Ohio Public Defender, Wiles appealed to the Ohio Supreme Court, raising the following twenty-nine propositions of law:

1. Ohio Revised Code Section 2929.04(A)(7) violates the United States and Ohio Constitutions because it does not properly limit the class of persons who can be sentenced to death and it is vague and overbroad.

2. Appellant was denied his right to a fair trial as a result of the prosecutor's unconscionable manipulation of the criminal justice system which resulted in appellant's indictment for a crime that

4

the prosecutor knew could not be proved and which served as the basis for the admission of prejudicial and otherwise inadmissible evidence.

3. The trial court's failure to limit its consideration to properly admissible evidence denied Mark Wiles a fair trial and a fair sentencing hearing.

4. The trial court abused its discretion when it allowed the testimony of a corrections officer whose name was not timely disclosed in discovery and the introduction of statements made by the defendant while incarcerated which were not timely disclosed in discovery.

5. The trial court erred to the prejudice of Mark Wiles when it admitted irrelevant and inflammatory statements allegedly made by Mr. Wiles while he was incarcerated awaiting trial and testimony concerning those statements.

6. In the absence of exigent circumstances a criminal defendant may not be interrogated by a member of any law enforcement agency until counsel has been provided and the accused has consulted with his attorney.

7. Mark Wiles's confessions and statements should have been suppressed because he was not given *Miranda* warnings.

8. An involuntary statement is inadmissible regardless of whether there has been superficial compliance with the requirements of *Miranda v. Arizona*.

9. Evidence is insufficient to sustain a conviction when it fails to establish any element of the offense by proof beyond a reasonable doubt. When the evidence presented is insufficient to sustain a conviction and the accused moves for a judgment of acquittal, the motion must be granted. Failure to do so denies appellant his right to due process and fair sentencing under the Eighth and Fourteenth

5

Amendments to the United States Constitution; and Sections 9 and 16, Article I of the Ohio Constitution.

10. Statements made by a decedent which do not come within the hearsay exception of Evidence Rule 803 or 804 are inadmissible to prove the truth of the matter asserted.

11. The trial court erred to the prejudice of appellant when it failed to have all proceedings recorded in violation of appellant's rights as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, Section 10 and 16, Article I of the Ohio Constitution, and Section 2929.05 of the Ohio Revised Code.

12. The prosecuting attorney violates the accused's right to a fair trial when he presents evidence and arguments which are inflammatory and prejudicial.

13. The trial court erred to the prejudice of appellant by refusing his request to increase the burden of proof to beyond all doubt as to guilt and the determination that death should be imposed.

14. The prosecuting attorney violated Mark Wiles's right to a fair sentencing hearing when he made inflammatory and prejudicial arguments in the sentencing phase of Mr. Wiles's capital trial.

15. A capital sentencing decision based upon nonstatutory aggravating circumstances violated the Ohio Revised Code and Sections 9 and 16, Article I of the Ohio Constitution and the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

16. The trial court's failure to consider all evidence presented in mitigation was a violation of appellant's constitutional rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

17. The trial court erred by failing to merge the two aggravating circumstances of which appellant was convicted into one for purposes of determining penalty.

18. The proportionality review that this court must conduct pursuant to R.C. 2929.05 is fatally flawed and therefore the present death sentence must be vacated pursuant to the Eighth and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I of the Ohio Constitution and R.C. 2929.05.

19. The death sentence in this case is disproportionate to the sentences approved by this court in similar cases, and thus constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Sections 9, 10 and 16, Article I of the Ohio Constitution.

20. In the present case the death sentence is inappropriate and excessive and has resulted in a cruel and unusual punishment and denial of due process and equal protection in violation of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 9, 10 and 16, Article I of the Ohio Constitution.

21. Upon an independent weighing, it is apparent that the one aggravating circumstance the defendant was found guilty of committing does not outweigh the mitigating factors beyond a reasonable doubt, and therefore, the death sentence cannot be affirmed, pursuant to R.C. 2929.05(A).

22. The aggravating circumstances in Section 2929.04(A) of the Revised Code of Ohio are impermissibly vague.

23. The trial court failed to properly set forth their specific findings in their opinion as required by R.C. 2929.03(F) thereby denying appellant his right to an effective appeal.

24. The trial court erred in imposing the death

7

sentence on appellant Mark Wiles. The Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I of the Ohio Constitution establish the requirements for a valid death penalty scheme. Ohio's statutory provisions governing the imposition of the death penalty contained in Revised Code 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04 and 2929.05, do not meet the prescribed requirements and thus are unconstitutional, both on their face and as applied to Mr. Wiles.

25. When independently weighing the aggravating circumstances and mitigating factors in a capital sentencing, the court of appeals may not consider nonstatutory aggravating circumstances and may not refuse to consider evidence offered in mitigation.

26. The death sentence in the present given case is disproportionate to sentences given in similar cases and is a cruel and unusual punishment and a denial of due process in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I of the Ohio Constitution.

27. Appellant, Mark Wiles, was denied his right, under the Ohio Constitution, to a grand jury indictment.

28. The trial court erred to the prejudice of the appellant in admitting and considering highly inflammatory and gruesome photos. The probative value of the photos was far outweighed by the danger of unfair prejudice, Evid. R. 403(A), and this denied appellant a fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

29. The cumulative effect of the many errors which occurred in the guilt and sentencing phases of Mr. Wiles's capital trial deprived him of due process of law and resulted in a death sentence which was arbitrary.

*Return Appendix*, Vol. IV, at 62-89.  The Ohio Supreme Court

affirmed the Court of Appeals on April 24, 1991.  *State v.*

*Wiles*, 571 N.E.2d 97 (Ohio 1991).  Thereafter, Wiles

petitioned to the United States Supreme Court for a writ of

certiorari.  That court denied the petition on October 5,

1992.  *Wiles v. Ohio*, 506 U.S. 832 (1992).

On September 20, 1996, Wiles filed a post-conviction

relief petition pursuant to Ohio Revised Code § 2953.21. He

alleged the following twenty-two claims for relief:

> 1. Petitioner's convictions and/or sentences are
> void or voidable because death by electrocution
> constitutes a blatant disregard for the value of
> human life, entails unnecessary and wanton
> infliction of pain and diminishes the dignity of
> man.
>
> 2. Petitioner Wiles's conviction and/or sentences
> are void or voidable because the Portage County
> Prosecutors labored under a conflict of interest
> when James L. Aylward, Esq. worked in and headed the
> Criminal Division of the Portage County Prosecutor's
> Office while the Office prosecuted Wiles's direct
> appeal to the Ohio Supreme Court.  Wiles never
> waived the conflict.
>
> 3. Petitioner Wiles's conviction and/or sentences
> are void or voidable because the State of Ohio has
> interfered with Wiles's attempt to investigate and
> prepare his post-conviction petition.  Wiles had
> requested all records maintained by the Portage
> County Sheriff's Department.  The Portage County
> Sheriff's Department made arrangements for Wiles's
> counsel to review the records.  The State, however,
> intervened in the orderly process and denied Wiles
> access to the records.

9

4. Petitioner Wiles's conviction and/or sentences are void or voidable because trial counsel were deficient in their failure to investigate and present available mitigating evidence.  More specifically, trial counsel failed to investigate and present testimony from his family and friends which details his family history, character and background.  This should be read in the context that the defense presented only one witness from Wiles's family.

5. Petitioner Wiles's conviction and/or sentences are void or voidable because his trial attorneys were deficient in failing to obtain the available expert services of a competent prepared clinical psychologist to testify at both the guilt and penalty phases of Wiles's trial.

6. Petitioner Wiles's conviction and/or sentences are void or voidable because the death penalty is disproportionately meted out to those defendants who are racial minorities and/or those defendants who are accused of killing white victims.

7. Petitioner Wiles's conviction and/or sentences are void or voidable because death sentences in Ohio are racially biased against African-Americans.

8. Petitioner Wiles's conviction and/or sentences are void or voidable because of prosecutorial misconduct.  The Portage County Prosecutor's Office intentionally released information to the media through unsealed discovery filed with the clerk of courts office, including inculpatory statements of the Petitioner.

9. Petitioner Wiles's conviction and/or sentences are void or voidable because his trial attorneys were deficient in failing to call the Portage County Sheriff who had opined to the media that Mark Klima was killed after surprising a burglar.

10. Petitioner Wiles's conviction and/or sentences are void or voidable because his trial attorneys were deficient at the culpability and sentencing phases of trial.

11. Petitioner Wiles's conviction and/or sentences are void and or voidable because his trial attorneys were deficient during the jury waiver process and the trial court erred in not having the jury waiver on the record.

12. Petitioner Wiles's conviction and/or sentences are void or voidable because a member of his panel, Hon. Joseph R. Kainrad, did not understand the weighing process.

13. Petitioner Wiles's conviction and/or sentences are void or voidable because his appeal of right was tainted by the introduction of victim impact evidence to the Ohio Supreme Court.

14. Appellate review plays an essential role in eliminating the systemic arbitrariness and capriciousness which infected death penalty schemes invalidated by *Furman v. Georgia*, 408 U.S. 238 (1972).  The teaching of *Furman* was that a state may not leave the decision of whether a defendant lives or dies to the unfettered discretion of the jury because such a scheme inevitably results in death sentences that are "wantonly and . . . freakishly imposed" and "are cruel and unusual in the same way that being struck by lightning is cruel and unusual." *Id.* at 309-10.  Therefore, some form of meaningful appellate review is required to assess the sentencer's imposition of the death penalty.

15. Petitioner Wiles's conviction and/or sentences are void or voidable because the introduction and subsequent admission of gruesome and inflammatory photographs constituted prejudicial error.

16. Petitioner Wiles's conviction and/or sentences are void or voidable because defense counsel failed to request, and the trial court failed to grant, a change of venue.

17. Petitioner Wiles's conviction and/or sentences are void or voidable because the prejudicial publicity, which occurred throughout his trial, deprived him of his right to a fair trial and a fair

11

and reliable sentencing determination.

18. Petitioner Wiles's conviction and/or sentences are void or voidable because the State of Ohio violated Petitioner's right to the effective assistance of counsel by denying access and failing to disclose to trial counsel information material to both the trial and sentencing phases of the proceedings.

19. Petitioner Wiles's conviction and/or sentences are void or voidable because the trial court failed to grant Petitioner's motion for acquittal made pursuant to Ohio R. Crim. P. 29.

20. Petitioner Wiles's conviction and/or sentences are void or voidable because the trial court overruled Petitioner's Ohio R. Crim. P. 29 motion for acquittal when there was insufficient evidence to support his conviction.

21. Petitioner Wiles's conviction and/or sentences are void or voidable because he was shackled at his capital trial.

22. Petitioner Wiles's conviction and/or sentences are void or voidable because the cumulative effects of the errors and omissions as presented in this petition paragraphs one (1) through one hundred seventy-one (171) have been prejudicial to the petitioner and have denied the Petitioner his rights as secured by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 9, 10, 16 of the Ohio Constitution.

*Return Appendix*, Vol. VI, at 4-56.  The trial court granted

the State's motion for summary judgment on February 18, 1997.

*State v. Mark Wayne Wiles*, No. 85 CR 098, slip op. (Ct. of

Common Pleas Feb. 18, 1997).

Wiles appealed the trial court's decision to the Eleventh

District Court of Appeals.  On June 19, 1997, he filed a merit

brief raising the following seven assignments of law:

> 1. The trial court erred in denying appellant's
> motion to strike the state's untimely filing.
>
> 2. The trial court erred in granting appellee's
> motion for Summary Judgment without giving appellant
> an opportunity to respond.
>
> 3. The trial court erred in issuing insufficient
> findings of fact and conclusions of law in regard to
> appellant's petition for post-conviction relief.
>
> 4. The trial court erred in denying appellant's
> motion to disqualify the Portage County Prosecutor's
> Office when an actual conflict exists.
>
> 5. Ohio's post-conviction process is not an adequate
> and corrective process.
>
> 6. The trial court erred in granting the appellee's
> summary judgment motion.
>
> 7. The trial court erred in denying the merits of
> appellant's post-conviction petition.

*Return Appendix*, Vol. VIII, at 124-128.  The Court of Appeals

affirmed in part and remanded in part.  *State v. Wiles*, 709

N.E.2d 898 (Ohio Ct. App. Apr. 14, 1998). While it overruled

the first, second, fifth, and sixth assignments of error, it

found that the trial court should have specified which claims

were barred by *res judicata* and should have held a hearing on

the appellant's motion to disqualify the Portage County

Prosecutor's Office.  The Court of Appeals remanded the case

for the trial court to enter a supplemental judgment regarding

13

which claims are procedurally barred and to hold a hearing on the conflict of interest issue.  Prior to holding such a hearing, the Portage County Prosecutor's Office withdrew as counsel for the State.  The trial court thereafter appointed the Office of the Ohio Attorney General as special prosecutor to represent the State.

On October 21, 1999, the trial court issued its supplemental judgment, once again denying Wiles's petition for post-conviction relief.  *State v. Mark Wayne Wiles*, No. 85 CR 0098, slip op. (Ct. of Common Pleas Oct. 21, 1999).  Wiles appealed the trial court's denial, raising eight assignments of error:

> 1. The trial court erred in considering the state's untimely summary judgment motion without giving appellant an opportunity to respond.
>
> 2. The trial court's findings of fact and conclusions of law improperly rely on *res judicata* and are insufficient as a matter of law as previously held by this Court in this case.
>
> 3. The trial court erred in considering the summary judgment motion of a conflicted party and in denying appellant's request for an in camera inspection of the conflicted prosecutor's file before it was transferred to the special prosecutor.
>
> 4. The trial court erred when it denied appellant an evidentiary hearing and discovery on his petition for post-conviction relief, thus violating his rights under the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments of the Constitution and Article I, Sections 1, 2, 9, 10, 16, and 20 of the

14

Ohio Constitution.

5. The trial court erred in granting the state's summary judgment motion.

6. The trial court erred in denying the merits of the appellant's post-conviction petition.

7. Ohio's post-conviction process is not an adequate corrective process.

8. The cumulative error of appellant's substantive claims merit reversal or a remand for a proper post-conviction process.

*Return Appendix*, Vol. IX, at 65-125. Thereafter, the Court of Appeals affirmed the trial court. *State v. Wiles*, No. 99-P-0109, 2001 WL 435397 (Ohio Ct. App. Apr. 27, 2001).

Wiles appealed the Eleventh District Court of Appeals' decision, raising the following eight propositions of law to the Ohio Supreme Court:

1. In a capital post-conviction proceeding, a trial court's consideration of the state's untimely summary judgment motion without giving the petitioner an opportunity to respond violates the petitioner's rights under the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution, and Article I, §§ 1, 2, 9, 10, 16, and 20 of the Ohio Constitution.

2. A trial court's improper use of the doctrine of *res judicata* to bar a capital post-conviction petitioner's claims for relief violates the petitioner's rights under the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution, and Article I, §§ 1, 2, 9, 10, 16, and 20 of the Ohio Constitution.

3. A trial court's consideration of the summary

15

judgment motion of a conflicted party and subsequent
denial of an appellant's request for an in camera
inspection of the conflicted prosecutor's file
before it was transferred to the Special Prosecutor,
violated appellant's rights under the Fifth, Sixth,
Eighth, Ninth, and Fourteenth Amendments to the
United States Constitution, and Article I, §§ 1, 2,
9, 10, 16, and 20 of the Ohio Constitution.

4. A trial court's failure to provide a capital
post-conviction petitioner an evidentiary hearing
and discovery on his petition for post-conviction
relief, violates the petitioner's rights under the
Fifth, Sixth, Eighth, Ninth, and Fourteenth
Amendments to the United States Constitution, and
Article I, §§ 1, 2, 9, 10, 16, and 20 of the Ohio
Constitution.

5. When a trial court grants the state's motion for
summary judgment despite the existence of genuine
issues as to material facts, such ruling violates
the Petitioner's rights under the Fifth, Sixth,
Eighth, Ninth, and Fourteenth Amendments to the
United States Constitution, and Article I, §§ 1, 2,
9, 10, 16, and 20 of the Ohio Constitution.

6. A trial court may not deny a post-conviction
petitioner's petition to vacate or set aside
sentence filed pursuant to Ohio Rev. Code Ann. §
2953.21 when each of the twenty-two claims for
relief set forth Constitutional violations upon
which relief should have been granted.

7. Ohio's post-conviction process is not an adequate
and corrective process.

8. The cumulative error of Wiles's substantive
claims merit reversal or a remand for a proper post-
conviction process.

*Return Appendix*, Vol. X, at 6-64.  On September 5, 2001, the

Ohio Supreme Court declined jurisdiction and dismissed the

appeal as not involving a substantial constitutional question.

16

*State v. Wiles*, 754 N.E.2d 260 (Ohio 2001).

On November 8, 2001, Wiles filed an application to reopen his direct appeal pursuant to Ohio Rule of Appellate Procedure 26(B) with the Eleventh District Court of Appeals (hereinafter "*Murnahan* proceeding" or "application to reopen").[1] He raised the following twenty-four assignments of error:

> 1. Statements made by a decedent which do not come within the hearsay exception of Evid. R. 803 or 804 are inadmissible to prove the truth of the matter asserted therein, and their improper use deprived Mr. Wiles of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.
>
> 2. The trial court erred to the prejudice of Appellant when it failed to have all proceedings recorded in violation of Appellant's rights as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Section 2929.05 of the Ohio Revised Code.
>
> 3. Electrocution constitutes cruel and unusual punishment in violation of the Eighth Amendment to

---

[1]    That rule states in relevant part:

> **(B) Application for reopening**
> (1) a defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

Ohio R. App. P. 26(B).

17

the United States Constitution.

4. Wiles's former counsel headed the same division of the Portage County Prosecutor's Office which prosecuted Wiles's direct appeal. As a result, Wiles was deprived of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

5. The State of Ohio interfered with Wiles's attempt to investigate and prepare his post-conviction petition. As a result, Wiles was deprived of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

6. Wiles was deprived of the effective assistance of counsel during the mitigation phase of his capital trial. As a result, Wiles was deprived of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

7. Wiles's attorney failed to obtain the available expert services of a competent and prepared clinical psychologist to testify at both the guilt and penalty phases of Wiles's trial. As a result, Wiles was deprived of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

8. In Portage County, Ohio, the death penalty is disproportionately meted out to those defendants who are racial minorities and/or those defendants who are accused of killing white victims. As a result, Wiles was deprived of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

9. In the State of Ohio, the death penalty is disproportionately meted out to those defendants who are racial minorities and/or those defendants who are accused of killing white victims. As a result, Wiles was deprived of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

18

10. The Portage County Prosecutor's Office intentionally released information to the media through unsealed discovery filed with the Clerk of Court's Office, including inculpatory statements of the Appellant. As a result, Wiles was deprived of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

11. Wiles's trial attorney failed to call the Portage County Sheriff who had opined to the media that Mark Klima was killed after surprising a burglar. As a result, Wiles was deprived of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

12. The actions of trial counsel deprived Mr. Wiles of his right to the effective of counsel during both the culpability and sentencing phases of his capital trial in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

13. Wiles's trial attorneys were deficient during the jury waiver process and the trial court erred in not having the jury waiver on the record. As a result, Wiles was deprived of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

14. A member of the panel which imposed the death sentence upon Wiles, Hon. Joseph R. Kainrad, did not understand the weighing process. As a result, Wiles was deprived of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

15. Wiles's appeal as of right was tainted by the introduction of victim impact evidence to the Ohio Supreme Court. As a result, Wiles was deprived of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

16. Ohio employs no meaningful proportionality review.  As a result, Wiles was deprived of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

17. The introduction and subsequent admission of gruesome and inflammatory photographs constituted prejudicial error. As a result, Wiles was deprived of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

18. Defense counsel failed to request, and the trial court failed to grant, a change of venue. As a result, Wiles was deprived of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

19. The prejudicial publicity which occurred throughout his trial deprived Wiles of his right to a fair trial and sentencing determination. As a result, Wiles was deprived of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

20. The State violated Wiles's right to the effective assistance of counsel by denying access and failing to disclose to trial counsel information material to both the trial and sentencing phases of the proceedings.  As a result, Wiles was deprived of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

21. The trial court overruled Wiles's Ohio R. Crim. P. 29 motion for acquittal when there was insufficient evidence to support his conviction.  As a result, Wiles was deprived of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

22. Wiles was factually innocent of aggravated murder and the underlying capital specification.  As a result, Wiles was deprived of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to

the United States Constitution.

23. Wiles was shackled at his capital trial. As a result, Wiles was deprived of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

24. The cumulative effects of the errors and omissions as presented by Wiles have been prejudicial to him and have denied his rights as secured by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 9, 10, and 16 of the Ohio Constitution.

*Return Appendix*, Vol. XI, at 2-13. The Eleventh District Court of Appeals denied the application to reopen on August 9, 2002. *State v. Wiles*, No. 1675, slip op. (Ohio Ct. App. Aug. 9, 2002).

## II. HABEAS PROCEEDING

On May 28, 2002, Wiles filed a Notice of Intent to File a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Thereafter, Wiles filed a Motion to Proceed *In Forma Pauperis* and a Motion to Appoint Counsel. (Doc. Nos. 4; 5.) The Court granted both motions, appointing Henry J. Hilow and John J. Ricotta to represent Wiles. (Doc. No. 8.)

Wiles filed the Petition on August 29, 2002 (Doc. No. 21), to which the Respondent filed the Return of Writ on October 31, 2002. (Doc. No. 28.) After requesting and

21

receiving one extension of time in which to file the Traverse, Wiles filed the Traverse on March 13, 2003. (Doc. No. 46.) The Respondent filed a Sur-Reply on March 31, 2003. (Doc. No. 48.)

### III. GROUNDS FOR RELIEF

Set forth below are the grounds for relief Wiles asserts in the Petition:

1. The trial court's death sentence on the basis of irrelevant, prejudicial and inadmissible evidence deprived Petitioner of a fair trial and fair sentencing hearing in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution, and denied Petitioner equal protection and fair treatment under the law in violation of the Fifth Amendment of the United States Constitution and Section 2, Article I and Section 26, Article II of the Ohio Constitution.

2. The trial court's consideration of and reliance on inadmissible other acts evidence in convicting Petitioner and sentencing him to death deprived Petitioner of a fair trial and fair sentencing hearing as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and violated his rights under the Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution.

3. The State's failure to disclose evidence in a timely fashion, and the trial court's admission of the evidence, denied Petitioner's right to effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and resulted in Petitioner's wrongful conviction and punishment in violation of the Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution.

4. The trial court's consideration of irrelevant and inflammatory evidence in both the guilt and sentencing phases of trial denied Petitioner's rights to fundamental fairness under the Eighth Amendment and to due process of law in violation of the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution.

5. The custodial interrogation of Petitioner in the absence of exigent circumstances and prior to being provided with counsel denied petitioner the right to effective assistance of counsel, due process of law and to a fair trial, and the right against compulsory self-incrimination, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and Sections 9, 10, and 16 of the Ohio Constitution.

6. Petitioner's conviction based upon insufficient evidence to establish each element of the offense of aggravated murder beyond a reasonable doubt denied Petitioner due process of law and a fair sentencing in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I of the Ohio Constitution.

7. Admission of the victim's hearsay declarations into evidence denied Petitioner his rights to equal protection, due process, confrontation and cross-examination of witnesses, and the right to put on a defense thereto, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Sections 9, 10, and 16, Article I of the Ohio Constitution.

8. The trial court's failure to record all proceedings denied Petitioner the effective assistance of appellate counsel, equal protection of the law, and due process of law in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution and in violation of Ohio Revised Code Section 2929.05.

9. Presentation of inflammatory and prejudicial

23

evidence at the guilt phase of trial denied
Petitioner a fair trial, due process of law and
equal protection of the law in violation of the
Fifth and Fourteenth Amendments to the United States
Constitution and Section 16, Article I of the Ohio
Constitution.

10. The trial court's denial of Petitioner's request
to increase the burden of proof to beyond all doubt
as to guilt and the determination of the death
sentence denied Petitioner the right to due process
and against cruel and unusual punishment in
violation of the Eighth and Fourteenth Amendments to
the United States Constitution and in violation of
the Ohio Constitution.

11. Presentation of inflammatory and prejudicial
evidence at the sentencing phase of trial denied
Petitioner a fair sentencing hearing, due process of
law and equal protection of the law in violation of
the Sixth, Eighth and Fourteenth Amendments to the
United States Constitution and Sections 9, 10, and
16, Article I of the Ohio Constitution.

12. The trial court's consideration of unindicted
non-statutory aggravating circumstances denied
Petitioner the right to due process of law, equal
protection of the law and against cruel and unusual
punishment in violation of the Fifth, Sixth, Eighth,
and Fourteenth Amendments to the United States
Constitution and Sections 9, 10, and 16, Article I
of the Ohio Constitution.

13. The trial court's failure to consider all
evidence regarding mitigating factors denied
Petitioner the right to due process of law, equal
protection, the right to a fair trial and the right
against cruel and unusual punishment under the
Sixth, Eighth, and Fourteenth Amendments to the
United States Constitution and Sections 2, 9, 10,
and 16, Article I of the Ohio Constitution.

14. The trial court's failure to merge the two
aggravating circumstances of which Petitioner was
convicted into one circumstance for determining his
penalty denied Petitioner the right to a fair

24

sentencing hearing, due process of law and the right against cruel and unusual punishment in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

15. The death sentence based upon the proportionality review set forth under the Ohio Revised Code 2929.05 denied Petitioner the right to be free from cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I of the Ohio Constitution.

16. Petitioner's death sentence is disproportionate to the sentences in similar cases, denying Petitioner's right against cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Sections 9, 10, and 16, Article I of the Ohio Constitution.

17. Petitioner's death sentence denied Petitioner the right to due process and equal protection of the law and the right against cruel and unusual punishment, in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 9, 10, and 16, Article I of the Ohio Constitution.

18. The improper weighing of aggravating circumstances and mitigating factors denied Petitioner's right to due process of law and against cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I of the Ohio Constitution.

19. Petitioner's sentence based upon the impermissibly vague mitigating factors set forth in Ohio Revised Code 2929.04(a)[sic] denied Petitioner due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.

25

20. The trial court's failure to properly set forth specific findings as required by Ohio Revised Code 2929.03(F) denied Petitioner the right to an effective appeal, due process of law and a fair sentencing in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I of the Ohio Constitution.

21. Petitioner's death sentence based upon Ohio's unconstitutionally vague statutory provisions governing the imposition of the death penalty denied Petitioner the right to due process of law and equal protection in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Sections 2 and 16, Article I of the Ohio Constitution and denied Petitioner the right against cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution.

22. The court of appeals' consideration of non-statutory aggravating circumstances and refusal to consider mitigation evidence denied Petitioner the right to due process of law and a fair sentencing in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 9, 10, and 16, Article I of the Ohio Constitution.

23. Petitioner's death sentence is disproportionate to sentences in similar cases, denying Petitioner the right to due process of law and the right against cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I of the Ohio Constitution.

24. The failure of the State to indict Petitioner under an indictment signed by a grand jury according to Ohio law denied Petitioner the right to equal protection of the law and to due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Sections 2 and 10, Article I of the Ohio Constitution.

25. The trial court's admittance and consideration of highly inflammatory and gruesome photos denied Petitioner the right to a fair trial and fair sentencing hearing in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 9, 10, and 16, Article I of the Ohio Constitution.

26. The cumulative effect of the many errors in the guilt and sentencing phases of the Petitioner's trial denied Petitioner the right to due process of law in violation of the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution, and denied the Petitioner the right against cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution.

27. The trial court's consideration of the State's untimely summary judgment motion without giving the Petitioner an opportunity to respond violated the Petitioner's rights in post-conviction proceedings under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 1, 2, 9, 10, 16, and 20 of the Ohio Constitution.

28. The trial court's improper use of the doctrine of *res judicata* to bar a capital post-conviction petitioner's claims for relief violated the Petitioner's rights under the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution, and Article I, Sections 1, 2, 9, 10, 16, and 20 of the Ohio Constitution.

29. The trial court's consideration of the summary judgment motion of a conflicted party and subsequent denial of a petitioner's request for an in camera inspection of the conflicted Prosecutor's file before it was transferred to the Special Prosecutor violated Petitioner's rights under the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 9, 10, 16, and 20 of the Ohio Constitution.

27

30.  The trial court's failure to provide a capital post-conviction petitioner an evidentiary hearing and discovery on his petition for post-conviction relief violated the Petitioner's rights under the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 9, 10, 16, and 20 of the Ohio Constitution.

31. The trial court's granting the State's motion for summary judgment despite the existence of genuine issues as to material facts violated the Petitioner's rights under the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution, and Article I, Sections 1, 2, 9, 10, 16, and 20 of the Ohio Constitution.

32. The trial court's denial of Petitioner's post-conviction petition to vacate or set aside sentence, filed pursuant to Ohio Revised Code Section 2953.21, containing twenty-one claims for relief setting forth constitutional violations upon which relief should have been granted, violated Petitioner's constitutional rights.

33. Ohio's post-conviction process is not an adequate and corrective process.

34. The cumulative error of Petitioner's substantive claims merit reversal or a remand for a proper post-conviction process.

35. Prior appellate counsel failed to raise several assignments of error denied Petitioner the effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and Section — [sic], Article I of the Ohio Constitution.

36. Petitioner was factually innocent of aggravated murder and the underlying capital specification.  As a result, he was deprived of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

*Petition*, *passim*.

28

## IV. FACTS

The facts of this case were relayed by the Ohio Supreme Court in ruling on Wiles's appeal as a matter of right. *State v. Wiles*, 571 N.E.2d 97 (Ohio 1991).  This Court repeats that factual history here, using the Ohio Supreme Court's language:

> Charles and Carol Klima are owners of Shakespeare Acres, a horse farm in Rootstown, Ohio, where they have resided since 1969. On June 22, 1970, Mark, their only child, was born. Beginning in 1982, the Klimas employed defendant-appellant Mark W. Wiles as a part-time laborer on the farm. In late 1982 or early 1983, Wiles was discovered by Mrs. Klima departing from her home. When asked about his presence in the house, appellant informed Mrs. Klima that he was cold and had entered the home in order to get warm. He was thereafter instructed to turn up the heat in the tack room and use it for that purpose in the future. On another occasion, appellant was found in the garage of the house slumped below an open exterior window. On neither occasion had appellant been given permission to enter the residence.

On the morning of January 19, 1983, appellant reported for work at Shakespeare Acres. At approximately 1:30 p.m., Carol Klima returned to the residence after tending to the horses. When she entered the kitchen she felt a draft but was uncertain from where it originated. After eating lunch, she proceeded to her bedroom whereupon she discovered an open window and the screen thereto on the ground below. Moreover, the doors to the bedroom closet and the drawers to the dresser had been opened. Subsequent investigation revealed that approximately $200 in coin and currency were missing from the residence. Only Carol Klima and appellant were present on the grounds of the farm at the time of the thefts. Despite the fact that he was owed money for work he had performed for the Klimas, appellant never returned to the farm to collect his paycheck.

On August 5, 1985, Mark Klima remarked to his mother that he had seen appellant in the main barn of the estate. Mark Klima mentioned that he had spoken with appellant and that appellant asked Mark whether he recognized him. Mark Klima reportedly

stated: "Yes, you're Mark Wiles." When appellant
stated that he wished to speak to Carol Klima, her
son directed appellant to the residence. While
appellant initially proceeded to the house, when the
family dog began to bark he turned around and left.

At approximately 4:30 or 5:00 a.m. on August 7,
1985, appellant arrived at the Klima farm. While
obscured in an adjacent field, appellant watched for
any activity at the home. Carol, Charles and Mark
Klima, Anne Marie O'Brien and Susie and Laura Kerper
were present in the Klima residence. Anne Marie and
the Kerper girls stayed on the farm to assist in the
maintenance of the horses and to receive horseback
riding lessons. At approximately 6:00 a.m., Charles
Klima left for work. Early that morning, Ms. O'Brien
also departed for her place of employment. The
remaining members of the household rose around 8:00
a.m. and had breakfast. Thereafter, Susie and Laura
left the residence to feed the horses. At
approximately 10:15 a.m., Carol Klima also left the
residence. Prior to departing, she instructed her
son, who was in his bedroom, to close the windows in
the house if it began to rain. The doors to the

31

house were left unlocked. Mark Klima apparently left the house shortly thereafter. After appellant observed the Klimas, the Kerpers and O'Brien leave, he entered the house and locked the door. He thereupon rummaged through the bedroom closet and dresser of Carol and Charles Klima and a desk in the living room. As appellant continued searching a china cabinet in the living room for valuables, he was confronted by Mark Klima who had reentered the house. In an ensuing scuffle, appellant stabbed Mark Klima repeatedly with a kitchen knife. Thereafter, appellant departed the residence with approximately $260 and returned to his home.

Meanwhile, after leaving the residence, Carol Klima proceeded to an outdoor exercising area and began to provide horseback riding instruction to Judy Campbell, who had arrived for a lesson. When it began raining, the lesson was moved inside a barn. In the course of the instruction, Susie Kerper approached Carol Klima and informed her that her attempt to retrieve some raincoats from the house was unsuccessful because the house was locked. A short while later the rain ceased and the

32

instruction continued outside. At this time, Susie
and Laura Kerper were instructed to return to the
house and prepare for an upcoming horse show. They
were instructed where to find a key to the house.
Shortly thereafter, Laura Kerper returned from the
house and informed Carol Klima that Mark was
unconscious on the floor covered in blood. Mrs.
Klima ran to the house, called medics and attempted
to administer artificial respiration to her son. In
the course of her attempt to revive Mark, Carol
Klima discovered a kitchen knife buried in his back.
When the medics arrived, they pulled up Mark's shirt
revealing multiple stab wounds in his back. It was
later determined by the coroner that two of the
twenty-four total wounds were lethal and another two
were "possibly lethal." Mark was transported to the
emergency room where he was pronounced dead.

At approximately 4:00 p.m. on August 7, 1985,
Chief Detective Duane Kaley and Detective Donald
Doak of the Portage County Sheriff's Office and
Officer Larry Hanks of the Akron Police Department
visited the house appellant shared with Gary Benden
and Valerie Marshall. The police officers

encountered Gary Benden outside the residence and asked to speak with appellant. Benden replied that appellant was inside the residence and, at the request of the officers, returned to the home to notify appellant of their presence. Appellant responded by requesting Benden to tell the officers that he was not home. When appellant was informed that the officers were already aware that he was inside the residence, appellant initially attempted to hide in the basement. At the urging of Benden, he eventually departed the house and approached the police officers. After being apprised of his rights, Wiles spoke with Chief Detective Kaley. During the course of this conversation, appellant denied that he had been to the Klima residence earlier in the day. Appellant remained outside with the officers for approximately forty-five minutes to one hour. At the conclusion of their discussion with appellant, the police officers departed. Shortly thereafter, appellant paid Benden $150 for rent and fled Akron.

On August 12, 1985, appellant contacted the Savannah, Georgia Police Department, announced that he was wanted for murder in Ohio and wished to

34

surrender to authorities. At approximately 10:25 a.m., Officer Joe Johnson was dispatched to 35010 Ogeechee Road, whereupon he was approached by appellant who stated that he was the person for whom the officer was looking.

Appellant thereafter identified himself. Once his identity was confirmed by the dispatcher, Officer Johnson resumed his conversation with appellant, who stated again that he wished to surrender to face charges for murder. Following this conversation, Officer Johnson requested proof of identification from appellant, who produced his driver's license. The information contained therein was relayed to the police dispatcher who confirmed that a warrant for appellant's arrest was outstanding. Appellant was informed of his rights, handcuffed and placed in the police cruiser for transportation to the station. No conversation occurred between Officer Johnson and appellant during the trip.

At approximately 11:48 a.m. on August 12, 1985, appellant was taken to a conference room at the police station and informed of his rights by

35

Detective J.E. Brinson. Utilizing a form listing
these rights, Detective Brinson placed a check mark
next to each enumerated right as he read it to
appellant and as appellant responded that he
understood that right. Appellant then was asked
again if he understood his rights and if, with those
rights in mind, he still wished to answer questions.
Appellant signified his affirmative response by
placing check marks and his initials in the
appropriate blanks, and then signing the form.

After initially denying any involvement,
appellant thereafter described to Detective Brinson
and Detective Everett Ragan his commission of the
homicide and his activities before, during and after
the act. He subsequently repeated his recollections
in the presence of a stenographer who later prepared
a transcript of the statement. This statement was
reviewed by appellant, who acknowledged its accuracy
by affixing his signature thereto.

At approximately 7:40 p.m. on August 12, 1985,
Portage County Detectives Kaley and Doak arrived in
Savannah, where they were transported to the police
station by Savannah Police Detective Bob Scott. Once

36

at the station, the three officers proceeded to a
police interview room in which appellant was
waiting. Prior to any questioning, appellant was
again advised of his rights.

Moreover, appellant was presented with a form
apprising him of his rights and he again indicated
in writing that he understood them but nevertheless
wished to speak with the detectives without presence
of counsel. Appellant thereupon repeated the
substance of his earlier statements implicating
himself in the crime. The conversation between the
detectives and appellant was taped and subsequently
transcribed.

*State v. Wiles*, 571 N.E.2d at 103-05.

## V. STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of
1996 (hereinafter "AEDPA"), Pub. L. 104-132 § 104, amending 28
U.S.C. § 2254 became effective on April 24, 1996.  The AEDPA
significantly altered the standard of review a habeas court
must apply, requiring increased deference to a state court's
decision.  The relevant statute states:

> (d) An application for a writ of habeas
> corpus on behalf of a person in custody
> pursuant to the judgment of a State court

37

> shall not be granted with respect to any
> claim that was adjudicated on the merits in
> State court proceedings unless the
> adjudication of the claim –
>> (1) resulted in a decision that
>> was contrary to, or involved an
>> unreasonable application of,
>> clearly established Federal law,
>> as determined by the Supreme
>> Court of the United States; or
>> (2) resulted in a decision that
>> was based on an unreasonable
>> determination of the facts in
>> light of the evidence presented
>> in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

Before interpreting this statute, this Court must determine whether it is applicable to the instant case.  In *Lindh v. Murphy*, 521 U.S. 320 (1997), the United States Supreme Court held that amended § 2254(d) does not apply to habeas corpus cases that were "pending" when the AEDPA was passed.  In *Williams v. Coyle*, 167 F.3d 1036, 1040 (6th Cir. 1999), the Sixth Circuit determined that a habeas case can only be "pending" for purposes of applying the AEDPA once the petition is filed.  The court first determined that the word must be given its ordinary meaning.  *Id.* at 1038 (citing *Moskal v. United States*, 498 U.S. 103, 108 (1990)).  Noting the similarities between the filing of a habeas petition and the filing of a civil complaint, the court observed that Federal Rule of Civil Procedure 3 states that "[a] civil

38

action is commenced by filing a complaint with the court."
Fed. R. Civ. P. 3.

The Sixth Circuit also looked to the language contained
in § 2254 to support its finding. Specifically, § 2254(e)
refers to "a proceeding instituted by an application for a
writ of habeas corpus." Moreover, section 1914(a) of Title 28
provides that the "district court shall require the parties
instituting any civil action, suit or proceeding . . . to pay
a filing fee of $150, except that on an application for a writ
of habeas corpus the filing fee shall be $5." Thus, the
statutes associate the commencement of a habeas corpus
proceeding with the filing of the application or petition.
Consequently, the Sixth Circuit determined that a habeas case
"commences" when the petition is filed. Thus, for purposes of
applying the AEDPA, a case may only be "pending" after it
commences, or after the filing of the petition. *Id.*

In the instant case, Wiles filed his Petition on August
29, 2002, over six years after the AEDPA's effective date.
Consequently, this Court will utilize the standard of review
set forth in amended 28 U.S.C. § 2254(d).

The United States Supreme Court interpreted this statute

39

in *(Terry) Williams v. Taylor*, 529 U.S. 362 (2000).[2] According to *Williams*, the phrases "contrary to" and "unreasonable application of" must be given independent meanings. *Id.* at 404-5. A state court decision can be "contrary to" a Supreme Court decision by one of two means: (1) "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law," and (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" that decision. *Id.* at 405. Because the word "contrary" is commonly understood to mean "diametrically different, opposite in character or nature, or mutually opposed," the Court noted, § 2254 "suggests that the state court's decision must be substantially different from the relevant precedent of [the Supreme Court]." *Id.* (citation

---

[2]        This decision supplanted the Sixth Circuit's prior interpretations of the statute in *Nevers v. Killinger*, 169 F.3d 352, 361-62 (6th Cir. 1998), *cert. denied*, 527 U.S. 1004 (1999) and *Maurino v. Johnson*, 210 F.3d 638, 643-44 (6th Cir. 2000), *cert. denied*, 531 U.S. 979 (2000). *See Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001)(holding that "[i]n light of the Supreme Court's decision in *Williams*, we find that *Nevers* and *Maurino* no longer correctly state the law on the issue of the appropriate standard under 28 U.S.C. § 2254(d).").

40

omitted).

The Court then went on to find that a state court makes an "unreasonable application" of Supreme Court law, and thus a habeas court may grant relief, only if "the state identifies the correct legal principle from this Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 365.  The Court held that "for purposes of today's opinion, the most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 422(emphasis in original).  *See also Bell v. Cone*, 535 U.S. 685, 698-99 (2002)(holding that, for a petitioner to succeed on a habeas claim, "he must do more than show that he would have satisfied [the applicable Supreme Court] test if his claim were being analyzed in the first instance, because under 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state court applied [Supreme Court precedent] incorrectly" . . . . "Rather, he must show that the [state court] applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner.").

Finally, the *Williams* Court provided guidance on how to interpret "clearly established holdings of the Supreme Court." *Id.* at 412.  The Court stated that this statutory phrase

"refers to holdings, as opposed to its dicta, of this Court's decisions as of the time of the relevant state-court decision." *Id.*  The *Williams* Court also looked to *Teague v. Lane*, 489 U.S. 288 (1989), and its progeny to help guide federal courts as to what qualifies as "clearly established Federal law." *Williams*, 529 U.S. at 412.  The Court opined that "[w]hatever would qualify as an 'old rule' under *Teague* will constitute 'clearly established Federal Law, as determined by [this] Court.'" *Id.* (citation omitted). Pursuant to *Teague*, "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." 489 U.S. at 301.

## VI. EXHAUSTION AND PROCEDURAL DEFAULT

### A. EXHAUSTION

A state prisoner must exhaust his state remedies before bringing his claim in a federal habeas corpus proceeding.  28 U.S.C. § 2254 (b), (c); *Rose v. Lundy*, 455 U.S. 509 (1982).  A federal court will not review a question of federal law decided by a state court if the state court's ruling is based on a state law ground that is independent of the federal question and is adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  This rule applies regardless of whether the state court's decision was based on

42

substantive or procedural issues of law. *Id.*

A habeas petitioner satisfies the exhaustion requirement when the highest court in the state in which the petitioner has been convicted has had a full and fair opportunity to rule on his or her claims. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). If the petitioner still has a remedy in the state courts in which the state court would have the opportunity to rule on the federal constitutional claims in petitioner's case, exhaustion has not occurred. *Rust v. Zent*, 17 F.3d at 160.

Here, the Respondent has asserted that all claims Wiles raised in the Petition have been exhausted in state court. *Return*, at 28. Although the state's failure to raise exhaustion does not invariably waive the defense, *Granberry v. Greer*, 481 U.S. 129, 133-34 (1987), and it is a petitioner's burden to prove exhaustion, *Rust*, 17 F.3d at 160, the Court sees no obvious exhaustion problems with the Petition in this case and does not engage in a *sua sponte* analysis of exhaustion where the Respondent has failed to raise it.

### B. PROCEDURAL DEFAULT

In *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), the

43

United States Supreme Court held that, for purposes of comity,
a federal court may not consider "contentions of federal law
which are not resolved on the merits in the state proceeding
due to petitioner's failure to raise them as required by state
procedure."  Additionally, the Supreme Court held in *Coleman*
*v. Thompson*, 501 U.S. 722, 749 (1991), that if a

> state prisoner has defaulted his federal claims in
> state court pursuant to an independent and adequate
> state procedural rule, federal habeas review of the
> claims is barred unless the prisoner can demonstrate
> cause for the default and actual prejudice as a
> result of the alleged violation of federal law, or
> demonstrate that failure to consider the claims will
> result in a fundamental miscarriage of justice.

As the Supreme Court more recently explained, "the procedural
default rule is neither a statutory nor a constitutional
requirement, but it is a doctrine adhered to by the courts to
conserve judicial resources and to respect the law's important
interest in the finality of judgments."  *Massaro v. United*
*States*, 538 U.S. 500, 504 (2003).

In *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), the
Sixth Circuit set out the analytical framework for determining
the defaulted status of a claim.  It stated: "[w]hen a state
argues that a habeas claim is precluded by the petitioner's
failure to observe a state procedural rule, the federal court
must go through a complicated [four-prong] analysis."  *Id.* at

44

138.  Specifically, the Sixth Circuit stated:

> First, the court must determine that there is a
> state procedural rule that is applicable to the
> petitioner's claim and that the petitioner failed to
> comply with the rule . . . . Second, the court must
> decide whether the state courts actually enforced
> the state procedural sanction . . . . Third, the
> court must decide whether the state procedural
> forfeiture is an "adequate and independent" state
> ground on which the state can rely to foreclose
> review of a federal constitutional claim. [Fourth,
> if] the court determines that a state procedural
> rule was not complied with and that rule was an
> adequate and independent state ground, then the
> petitioner must demonstrate . . . that there was
> "cause" for him to not follow the procedural rule
> and that he was actually prejudiced by the alleged
> constitutional error.

*Id.* (citations omitted).

The Respondent asserts this Court must not review some of
the claims Wiles raises in the Petition because they are
procedurally defaulted.[3] The Court will address each
individual allegation of procedural default when it analyzes
Wiles's distinct claims for relief.

### VII. ANALYSIS OF GROUNDS FOR RELIEF

### A. First Ground for Relief - Consideration of "Other Act" Evidence in Count Three

Wiles alleges in this ground for relief that the
prosecution's inclusion of count three of the indictment was

---

[3]    Respondent alleges that Petitioner has defaulted all
or part of the following claims: 7, 8, 9, 25, 32,
34, and 36.

45

improper.  He contends that the prosecution merely indicted
Wiles on this charge to find an avenue by which the State
could introduce otherwise inadmissible "other acts" evidence.
Wiles alleges that the decision to charge him on the 1983
burglary influenced his decision to waive a jury trial.  As
the Respondent notes, Wiles raised this claim as his second
proposition of law to the Ohio Supreme Court on direct appeal.
Thus, it is not defaulted and the Court may address it on the
merits.

Wiles's indictment contained one count of aggravated
murder and two counts of burglary.  One of the burglary counts
charged Wiles with the burglary of the Klima home in 1983,
approximately two and a half years prior to the 1985 burglary
and murder of Mark Klima.  During trial, the prosecution
introduced evidence to support the 1983 burglary charge
through the testimony of Lewis Ripley and Christopher Beans.
Carol Klima, the victim's mother, also testified that on prior
occasions she found Wiles unexpectedly in her home and garage.
At the close of the state's case, the defense moved to dismiss
count three of the indictment.  The trial court granted the
motion.

In its review of this claim on direct appeal, the Ohio
Supreme Court found that the evidence the prosecution

46

introduced to support the 1983 burglary was distinct from the evidence introduced to support the 1985 burglary and aggravated murder charges. The Ohio Supreme Court held, however, that no prejudice inured to Wiles from the inclusion of the 1983 charge. *State v. Wiles*, 571 N.E.2d 97, 108 (Ohio 1991). Rather than demonstrating prejudice, the court held, the three-judge panel's decision to dismiss count three while convicting on the remaining counts "'demonstrated its ability to segregate the proof on each charge.'" *Id.* (quoting *State v. Brooks*, 542 N.E.2d 636, 645 (Ohio 1989)).

Wiles does not assert, as he cannot, that the Ohio Supreme Court's finding was contrary to or an unreasonable application of any United States Supreme Court precedent. In fact, with the exception of Wiles's vague assertion that his Sixth Amendment right to a fair trial was impinged upon because of the inclusion of count three, Wiles's first ground for relief cites no federal law whatsoever. Without such an assertion and ample authority to support it, this Court's inquiry must conclude. 28 U.S.C. § 2254(d)(1)-(2). Wiles's first ground for relief is not well-taken.

## B. Second Ground for Relief - Consideration of "Other Act" Evidence during Sentencing

Wiles next asserts that the three-judge panel's

47

consideration of count three during its sentencing phase
deliberations was constitutionally impermissible.  Wiles
raised this claim before the Ohio Supreme Court thus this
claim is not barred from a merit review here.

As is required pursuant to Ohio Revised Code §
2929.03(F), the trial court issued an opinion specifying the
factors it considered in reaching its sentencing decision.  In
that opinion, the trial court stated: "8. The defendant, while
relatively youthful, had been previously convicted of
aggravated burglary, refused drug and alcohol treatment,
displayed defiance of authority, and participated in other
criminal activity for which he was not apprehended or
convicted." *Return Appendix*, Vol. II, at 328.  Wiles asserts
that the last statement regarding "other criminal activity"
was a specific reference to the 1983 alleged burglary of the
Klima home.  He claims that use of this crime in determining
his sentence was improper because the court previously had
dismissed the count related to this charge.

On direct appeal, the Ohio Supreme Court rejected this
claim, stating:

> While it is certainly arguable that the last
> reference encompasses the 1983 burglary charge which
> was subsequently dismissed by the court,
> consideration of evidence relating to that charge at
> the sentencing stage does not constitute reversible

48

error. In *United States v. Donelson* (C.A.D.C.1982),
695 F.2d 583, the federal appellate court observed
as follows:

" * * * It is well established that a sentencing
judge may take into account facts introduced at
trial relating to other charges, even ones of which
the defendant has been acquitted. * * * " *Id.* at
590.

*State v. Wiles*, 571 N.E.2d at 109.

Wiles does not assert that the Ohio Supreme Court's
decision is contrary to any United States Supreme Court
precedent.  While he cites *Irvin v. Dowd*, 366 U.S. 717, 722
(1961), for the proposition that a conviction must be based on
properly admitted evidence, he fails to demonstrate how this
holding applies to the trial court's sentencing consideration.
Without providing the Court with any precedent finding that
the trial court's possible consideration of count three in its
sentencing decision was constitutionally impermissible, this
claim must fail.  Moreover, it is only a minute part of the
total evidence in the sentencing phase, so even if it was
error, it was not prejudicial.

   **C. Third Ground for Relief - *Brady* Violation Caused
Ineffective   Assistance of Counsel**

   Wiles contends in his third ground for relief that the
prosecution's decision to withhold evidence until immediately
before trial and the trial court's admission of it caused his

49

counsel to provide him with ineffective assistance. Specifically, Wiles alleges that the trial court's admission of the testimony of Corrections Officer Keith Jirousek, even though the state failed to list Officer Jirousek as a witness by the court-imposed deadline, rendered counsel unprepared to counter the effects of his testimony. Wiles raised this claim to the Ohio Supreme Court on direct appeal. Thus, the Court may address it on the merits.

The trial court held a pre-trial hearing on December 30, 1985, one week prior to the January 7, 1986 trial commencement date. At the hearing, the trial court required that both parties complete discovery on that date. The court pressed the prosecution to furnish all discovery to the defense by the end of the day:

> The Court:     It's then complete and you will not
>                offer anything into evidence that has
>                not been given to them as of today?
>
> Prosecutor:    As far as I know, your Honor, unless we
>                accidentally overlooked something.
>
> The Court:     No, we're going along, we're going to say
>                that as of today you tell me that you have
>                given them discovery.
>
> Prosecutor:    That is correct, your Honor.

50

```
The Court:     I don't want you to find something as

               of tomorrow, because you won't be

               permitted to use it.
```

*Return Trial Trans.*, Vol. I, Section II A-1, at 4-5.

On January 6, 1986, however, the prosecution relayed to the defense that it planned to call Officer Jirousek to testify regarding two statements Wiles made during an incident that had occurred in prison on December 10, 1985.  Although defense counsel objected, the trial court permitted Officer Jirousek to testify as follows:

```
Q:  What were the statements he made?

A:  When Corporal Blair came on the floor with C.O.
    Cardinal - -

Q:  That is Corporal Blair?

A:  Yeah.  He come [sic] on the floor and was
    talking to [Wiles].  He [Wiles] said, "I want to
    be transferred out of this jail to Summit County
    Jail before I fucking kill someone else."

                      * * *

Q:  Then subsequent to that, after that, okay, after the
    defendant's attorney had left the floor - -

A:  After that?

Q:  Yeah, after that - -
```

51

                              *  *  *

    A:   At that Mr. Sergeant came to the floor and

         went to the dispensary where Mr. Wiles was.

    Q:   What did he say?

    A:   He said to Mr. Sergeant, "How come you're

         treating me like a kid or that?  Is it because I

         killed one of your boys?"

*Return Trial Trans.*, Vol. II, at 374; 376.

    Wiles asserts here, as he did on direct appeal, that the
prosecution deliberately withheld Officer Jirousek's name from
its witness list.  This is true, Wiles contends, because, when
the trial court asked the prosecutor why it previously had not
listed Officer Jirousek as a witness, the prosecutor
responded, "And yesterday morning we attempted to inform the
Court we had additional witnesses because of tactical
considerations in this trial." *Id.* at 368.

    Moreover, Wiles takes issue with the trial court's
decision to admit this testimony even though it was untimely
pursuant to the court's order.  He asserts that it left
defense counsel unprepared as to how to respond to it.  Had
defense counsel been made aware of these statements by the
December 30, 1985, deadline, Wiles maintains, they could have
hired experts to testify regarding the stress one endures

                                52

prior to a capital trial in an attempt to explain his
behavior.

As an initial matter, the Court finds that Officer
Jirousek's statements do not constitute withheld evidence in
violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  To
establish a claim under *Brady*, "the petitioner has the burden
of establishing that the prosecutor suppressed evidence; that
such evidence was favorable to the defense; and that the
suppressed evidence was material."  *See Carter v. Bell*, 218
F.3d 581, 601 (6th Cir. 2000)(citing *Moore v. Illinois*, 408
U.S. 786, 794-95 (1972)).  "The inquiry is objective,
independent of the intent of the prosecutors."  *Id.*  (citing
*Brady*, 373 U.S. at 87.)  Officer Jirousek's testimony was
clearly not favorable to the defense.  Because these
statements could be construed as confessions to the killing of
Klima, these statements were *in*culpatory.

Moreover, this Court's review of the admissibility of
trial evidence is a limited one.  "Habeas review does not
encompass state courts' rulings on the admission of evidence
unless there is a constitutional violation."  *Clemmons v.
Sowders*, 34 F.3d 352, 357 (6th Cir. 1994).  Admission of
evidence is a matter of state law, and alleged error, such as
improper admission of evidence, usually does not support a

writ of habeas corpus.  *Estelle v. McGuire*, 502 U.S. 62, 67
(1991).  A state law violation, however, may rise to the level
of a due process violation if it created a serious risk of
convicting an innocent person.  *Neumann v. Jordan*, 84 F.3d
985, 987 (7th Cir. 1996).  Barring this circumstance, a
federal court must defer to the state court's interpretation
of its own rules of evidence and procedure.  *Allen v. Morris*,
845 F.2d 610, 614 (6th Cir. 1988), *cert. denied*, 488 U.S. 1011
(1989).  A federal court does not act as an additional court
of appeals to review a state court's interpretation of its own
laws.  *Id.*

The Ohio Supreme Court found no merit to this claim on
direct appeal.  It held:

> There is nothing in the record to indicate that the
> office of the prosecuting attorney was aware of
> these statements at the time of the pretrial
> conference (December 30, 1985) such as to suggest a
> willful violation of Crim.R. 16(B)(1)(e) and (D).
> Nevertheless, Jirousek was aware of these statements
> at the time they were made. Inasmuch as "[t]he
> police are a part of the state and its prosecutional
> machinery," *State v. Tomblin* (1981), 443 N.E.2d 529,
> 531, such knowledge on the part of a law enforcement
> officer must be imputed to the state. *State v.
> Sandlin* (1983), 463 N.E.2d 85, 90-91. Accordingly,
> the prosecuting attorney was not in compliance with
> the December 30 discovery order.
>
> However, Crim.R. 16(E)(3) vests in the trial court
> the discretion to determine the appropriate response
> for failure of a party to disclose material subject
> to a valid discovery request. In *State v. Parson*

(1983), 453 N.E.2d 689, 691, this court observed that, under such circumstances, "the trial court is vested with a certain amount of discretion in determining the sanction to be imposed for a party's nondisclosure of discoverable material. The court is not bound to exclude such material at trial although it may do so at its option." Reversible error exists only where the exercise of such authority by the trial court constitutes an abuse of discretion. *State v. Parson*, *supra*, at 453 N.E.2d at 691; *State v. Apanovitch* (1987), 514 N.E.2d 394, 402.

* * *

From a review of the record of the instant case, it is evident that appellant has failed to demonstrate that the violation of Crim.R. 16 by the state constitutes reversible error.

While the knowledge of Jirousek of the statements made by appellant is imputable to the prosecution for purposes of determining whether the rule was violated, such imputed knowledge is not sufficient to constitute a willful violation thereof. Instead, the acts of the prosecution itself must be evaluated. Appellant contends that willful violation of the rule on the part of the prosecuting attorney may be inferred from the statements of the chief assistant prosecutor who, appellant claims, admitted at trial that such nondisclosure was for "tactical considerations * * *." However, a close reading of the trial transcript reveals that the prosecution was referring to the decision to employ Jirousek as a witness for the state, not to a conscious attempt on its part to withhold discoverable material.

Moreover, the chief assistant prosecutor stated at trial that he had disclosed all information about which he was aware at the time of the pretrial conference. The trial court was apparently satisfied that the representation of the assistant prosecutor was worthy of belief. We have no reason to question this conclusion.

55

> That the state did not willfully fail to disclose
> such information is further supported by the efforts
> taken by the prosecution once the existence of
> appellant's statements had become known to it.
> Supplemental discovery was undertaken by the
> prosecution by the hand delivery of the information
> to the defense once its existence became apparent.
> Despite the failure to submit the material by
> December 30, its delivery to the defense on January
> 2, 1986 reveals due diligence on the part of the
> prosecution and a total absence of any tactical
> advantage obtained by the state as a result of a
> three-day delay in its production. Even with the
> delay, the information was provided four days before
> trial and six days prior to Jirousek's testimony.
>
> Second, it cannot be confidently stated that
> foreknowledge by the defense of the existence of the
> statements by December 30 would have benefitted its
> case. It is the contention of appellant that
> foreknowledge would have permitted the defense to
> more adequately attack the credibility of such
> statements. However, a bald assertion to this effect
> is insufficient to demonstrate that the trial court
> committed reversible error.

*State v. Wiles*, 571 N.E.2d at 110-11.

The Court cannot find that the admission of the Jirousek testimony led to the conviction of an innocent person. Because Wiles confessed to the crime to Detective Brinson and Detective  Ragan of the Savannah Police Department, the Court is confident that Wiles was not denied the right to a fair trial.  Because Wiles's trial was not prejudiced as a result of Officer Jirousek's testimony, the Court also finds that Wiles cannot establish that the prosecution or the trial court rendered his trial counsel's assistance ineffective.

*Strickland v. Washington*, 466 U.S. 668 (1984). Thus, Wiles's third ground for relief is not well-taken.

**D. Fourth Ground for Relief - Admission of Inflammatory Evidence**

Like his previous claim, Wiles once again objects to the trial court's admission of Officer Jirousek's testimony. In this ground for relief, Wiles asserts that the trial court's decision to admit his statement denied him the right to a fair trial because the statements were irrelevant and inflammatory. As stated above, the Court's review of this admissibility of evidence claim is limited to whether it created a serious risk of convicting an innocent person. *Neumann v. Jordan*, 84 F.3d 985, 987 (7th Cir. 1996).

On direct appeal, the Ohio Supreme Court found that this claim lacked merit. It found that the statements were relevant pursuant to Ohio Rule of Evidence 401 because they tended to demonstrate Wiles's role in the death of Mark Klima. *State v. Wiles*, 571 N.E.2d 111-12. The Court finds, as stated above, that Officer Jirousek's testimony did not deny Wiles a fair trial. Moreover, the Court finds that the Ohio Supreme Court's findings are not clearly contrary to any United States Supreme Court precedent. Accordingly, Wiles's fourth claim lacks merit.

### E. Fifth Ground for Relief - *Miranda* Violation

Wiles alleges in this ground for relief that a confession he made to police officers in Georgia should have been suppressed during trial because it was made in violation of his constitutional rights. He asserts that the Georgia police officers should have waited until he procured counsel before being allowed to question him, even though he knowingly and voluntarily waived his right to counsel prior to providing the confession.

As stated above, several days after the death of Mark Klima, Wiles fled to Savannah, Georgia.  Once there, he contacted the local police department, announcing that he was wanted for murder in Ohio and that he wished to surrender himself to authorities.  Although Wiles made some incriminating statements before police were able to read him his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), officers read Wiles his rights and he then signed a form indicating that he wished to waive those rights.  While Wiles initially denied involvement in the Klima murder, he subsequently confessed but asserted that Klima attacked him with a knife.  Wiles reviewed his police statement for accuracy and signed it thereafter.

Wiles now asserts that he, and other suspects subject to

58

custodial interrogation, should not be questioned without first obtaining counsel despite a voluntary waiver of that right.  *Miranda* makes no such requirement.  While *Miranda* requires that custodial investigations may not take place without informing the accused of his or her right to retain counsel before interrogation, the accused may waive those rights if that waiver is knowing, voluntary, and intelligent. *North Carolina v. Butler*, 441 U.S. 369, 374 (1979).  "[T]he question of waiver must be determined on 'the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'"  *Id.* at 374-75 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

On direct appeal to the Ohio Supreme Court, the court correctly identified *Miranda* as the controlling United States Supreme Court precedent on this issue, yet found that Wiles lacked authority to support his assertion that, because *Miranda* does not adequately protect custodial suspects, an accused may never make a knowing and intelligent waiver.  It held:

> In his sixth proposition of law, appellant urges
> this court to disapprove the use of custodial police
> interrogations where a suspect has not actually
> consulted counsel prior thereto. Appellant further
> contends that this result should obtain even where
> the accused has voluntarily waived his
> constitutional rights and has chosen to speak to

59

authorities. This rule is necessary, appellant
maintains, because "Miranda has failed" to protect
criminal defendants from coerced confessions.

This argument is without merit. It has been the
consistent view of the United States Supreme Court
that the Fifth Amendment protects one accused of a
crime from being coerced into testifying against
himself. In order to assure that any statements made
by a criminal defendant are voluntary, *Miranda v.
Arizona* (1966), 384 U.S. 436, requires that the
accused be apprised of his rights prior to
questioning. This court lacks the

authority to interpret the Fifth Amendment more or less
expansively than the United States Supreme Court.

Appellant cites no authority which supports his
proposition that all inculpatory custodial
statements are, by their very nature, compelled.
Rather, the relevant provisions of the state and
federal Constitutions require that such statements
not be the product of coercion.

*State v. Wiles*, 571 N.E.2d at 113-14.

In denying this proposition of law, the Ohio Supreme

Court did not unreasonably apply *Miranda*.  On the contrary,

the court cited to *Miranda* and noted that its own authority

was limited by that holding.  Thus, Wiles's fifth ground for

relief lacks merit.

**F. Sixth and Thirty-sixth Grounds for Relief - Insufficient
   Evidence**

Wiles's sixth ground is that the state failed to set

forth sufficient evidence to prove that he purposely killed

Mark Klima, as is required under Ohio law for an aggravated

60

murder conviction. Additionally, he asserts that the state did not prove sufficiently that the murder took place in order to escape detection, an aggravating factor pursuant to Ohio Revised Code § 2929.04(A)(3).[4]

Although in his thirty-sixth ground for relief Wiles cites to *Herrera v. Collins*, 506 U.S. 390 (1993), in his Petition, thus presumably raising an actual innocence claim, he clarifies in the Traverse that he is raising a claim of insufficient evidence because the trial court considered non-statutory aggravating circumstances in reaching its sentencing decision. The Respondent correctly asserts that Wiles failed to raise this claim at any juncture of his state court proceedings and, therefore, it is procedurally defaulted. Thus, the Court will not review this claim on the merits.[5]

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the United States Supreme Court determined the correct standard of review that a habeas court must employ when reviewing a sufficiency

_____

[4] That statute states that the prosecution can establish this aggravating factor if the factfinder concludes that the defendant killed "for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by the offender." Ohio Rev. Code § 2929.04(A)(3).

[5] The Court addresses the trial court's consideration of non-statutory aggravating circumstances in ground for relief 12.

61

of evidence claim.  It concluded that the habeas court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319.  The Sixth Circuit determined in *York v. Tate*, 858 F.2d 322, 330 (6th Cir. 1988), *cert. denied*, 490 U.S. 1049 (1989), that a habeas court must apply only the *Jackson* standard when reviewing a sufficiency of evidence claim, rather than be guided by Ohio common law.

In complying with this mandate, a habeas court must limit itself to evidence adduced during trial, as a "sufficiency of evidence review authorized by *Jackson* is limited to 'record evidence.'  *Jackson* does not extend to non-record evidence, including newly discovered evidence."  *Herrera v. Collins*, 506 U.S. 390, 402 (1993)(citing *Jackson*).

On direct appeal, the Ohio Supreme Court identified *Jackson* as the controlling case in assessing sufficiency of evidence claims.  That court found that Wiles failed to meet the *Jackson* standard.  First, it found that, because Wiles stabbed Klima at least ten times in the back and chest, "[a] rational factfinder could conclude from the number and location of these wounds that Wiles had a 'purpose' to cause the death of Mark Klima."  *State*

*v. Wiles*, 571 N.E.2d at 115.  Moreover, the court found that, because Mark Klima was the sole witness to Wiles's burglary of the Klima home, a rational factfinder could conclude that Wiles killed Klima in order to escape detection for the burglary.  *Id.* at 116.

The Ohio Supreme Court's application of the *Jackson* standard is not an unreasonable one.  Thus, Wiles's sixth ground for relief is without merit.

**G. Seventh Ground for Relief - Admission of Victim's Hearsay Statements**

Wiles asserts in ground seven that Carol Klima's testimony regarding what her son had told her was hearsay and should have been excluded.  During trial, Carol Klima testified that, two days prior to his murder, her son told her that Wiles had visited their home.

The Respondent alleges that this claim is procedurally defaulted because trial counsel failed to object contemporaneously to Carol Klima's testimony.  Thus, the Ohio Supreme Court reviewed this claim pursuant to a plain error standard.  Ohio courts have determined that a failure to contemporaneously object to an alleged error constitutes procedural default.  *State v. Williams*, 364 N.E.2d 1364 (Ohio 1977).  If a defendant fails to object to a trial error that

would affect a substantial right, then the appellate courts will conduct a plain error analysis of that claim. *State v. Slagle*, 605 N.E.2d 916, 925 (Ohio 1992).[6]

In *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000), the Sixth Circuit held that "[c]ontrolling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules." Thus, a claim reviewed under a plain error standard is an adequate and independent state ground which precludes a federal habeas court from conducting a merit review of that claim. Accordingly, the Court finds that Wiles's seventh ground for relief is procedurally defaulted.

Wiles asserts that he can overcome this procedural default by demonstrating cause and prejudice to excuse the default. First, Wiles asserts that the "cause" for procedurally defaulting this claim is ineffective assistance of counsel. Courts have held that ineffective assistance of counsel, if proved, is sufficient to satisfy the "cause" prong to excuse procedural default. *See, e.g., White v. Schotten*, 201 F.3d 743,

---

[6]    Additionally, Ohio Rule of Criminal Procedure 52(B) states:
       **(B) Plain error**
           Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

753 (6th Cir. 2000), *cert. denied*, 531 U.S. 940 (2000)(holding appellate counsel ineffective for failing to file appeal on client's behalf and permitting district court to address merits of claim if petitioner could demonstrate prejudice); *Hollis v. Davis*, 912 F.2d 1343 (11th Cir. 1990), *cert. denied*, 503 U.S. 938 (1992)(determining counsel's ineffectiveness for failure to challenge racial composition of jury sufficient to establish cause to excuse procedural default).

The United States Supreme Court has held, however, that a petitioner may only use an ineffective assistance of counsel claim to establish cause if that separate ineffective assistance of counsel claim is, in itself, not procedurally defaulted. *Carpenter v. Edwards*, 529 U.S. 446 (2000). Thus, pursuant to *Carpenter*, a habeas petitioner must demonstrate either that the distinct ineffective assistance of counsel claim is not procedurally defaulted, or cause and prejudice to excuse the default for that claim.

As Respondent notes, Wiles has neither raised an ineffective assistance of counsel claim for failure to object to Carol Klima's testimony at any juncture of his state court appeals nor has he raised such a claim in the Petition. Thus, this discreet ineffective assistance of counsel claim is procedurally defaulted. Wiles does not allege any cause or prejudice to

excuse this claim, thus, he cannot use it as "cause" to excuse the procedural default of his Carol Klima hearsay claim. Accordingly, the Court finds that Wiles's seventh ground for relief is procedurally defaulted and will not address it on the merits.[7]

### H. Eighth Ground for Relief - Incomplete Record

In this ground, Wiles asserts that the trial court improperly failed to record three portions of his trial. First, he asserts that the trial court failed to record the crime-scene view. He next asserts that the trial court failed in its obligation to place the jury waiver colloquy on the record. Finally, Wiles objects to the trial court's failure to record the defense's objection to the jury array. The Court will address each argument chronologically.

Wiles raised the crime-scene record waiver claim on direct appeal to the Ohio Supreme Court. That court held that because Wiles neither requested a record be made at the time of the view

---

[7]     Were it to do so, the Court would find that this claim lacks merit. When raised on direct appeal to the Ohio Supreme Court, that court held that, although Carol Klima's statement was inadmissible hearsay and should not have been admitted during trial, there was sufficient evidence aside from that testimony to support the specification. *Wiles*, 571 N.E.2d at 117. This holding is not contrary to or an unreasonable application of any United States Supreme Court precedent.

nor on direct appeal, Wiles had waived any alleged error that occurred because of the trial court's failure to record the crime scene view. *State v. Wiles*, 571 N.E.2d at 121. Thus, this sub-claim is procedurally defaulted. The court will not address it on the merits.[8]

Wiles's second sub-claim is also procedurally defaulted. Wiles failed to raise it at any juncture in his state court proceedings and does not state with specificity how he can overcome this failure to exhaust his claim. Thus, the Court will not address it on the merits.

Were it to do so, the Court would find it not-well taken in any event. The right to a jury trial is a fundamental constitutional right. *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968). To waive this right, a criminal defendant must meet the following four conditions: (1) the waiver must be in writing; (2) the government attorney must consent to the waiver; (3) the trial court must consent to the waiver; and, (4) the defendant's waiver must be knowing, voluntary and intelligent. *Spytma v. Howes*, 313 F.3d 363, 370 (6th Cir. 2003)(citing *United States v. Martin*, 704 F.2d 267, 272 (6th Cir. 1983)). For a waiver to be

---

[8]     This claim lacks merit. Wiles makes no allegation regarding what occurred during the crime-scene view or how the trial court's failure to record it was prejudicial to him.

67

knowing, voluntary, and intelligent, the defendant must possess
the mental capacity to comprehend what he is waiving, as well as
be sufficiently informed about the consequences of his decision.
Specifically, a defendant should know that the jury is composed
of 12 members, that he may participate in jury selection, that
the jury must be unanimous in reaching a verdict, and, if the
defendant elects to waive this right, the judge alone will
decide the defendant's guilt or innocence. *Id.*

Although it is preferable for the trial court to conduct an
on-the-record colloquy of the jury waiver, there is no
constitutional right to such a colloquy. *Sowell v. Bradshaw*,
372 F.3d 821, 832 (6th Cir. 2004)(following *Martin*, 704 F.2d at
273). Moreover, failure to conduct an on-the-record colloquy
"does not *ipso facto* constitute reversible error." *United
States v. Cochran*, 770 F.2d 850, 853 (9th Cir. 1985). Once a
waiver is effectuated, the burden is on the petitioner to
demonstrate that the waiver of the jury trial right was *prima
facie* invalid. *Sowell*, 372 F.3d at 832; *Milone v. Camp*, 22 F.3d
693, 704 (7th Cir. 1994). Whether the jury trial waiver was
invalid depends on the factual circumstances of the case. *Lott
v. Coyle*, 261 F.3d 594, 615 (6th Cir. 2001)(quoting *Martin*, 704
F.2d at 272). "In the absence of contemporaneous evidence
outside of the written waiver showing that the waiver was [not]

68

knowing and intelligent, [a court] must give presumptive force to [the] written document." *Id.*

Wiles sets forth no facts, beyond mere allegation, to support his claim that because the jury waiver was not recorded it was therefore invalid. Without further allegation that Wiles suffered some ill effect from the trial court's failure to record the jury waiver, the Court finds that Wiles cannot make a *prima facie* case that a constitutional violation occurred. Thus, this claim has no merit.

Wiles's third sub-claim is procedurally defaulted on similar grounds. Wiles failed to raise this claim at any point in state court and cannot now do so. Thus, the Court will not address the merits of the claim.[9]

## I. Ninth and Eleventh Grounds for Relief - Prosecutorial Comments

Wiles asserts that the prosecutor's comments during closing argument at both the guilt and sentencing phases of trial rendered his trial fundamentally unfair. He asserts that many of the prosecutor's comments were inflammatory, designed to

---

[9]     This claim also lacks merit.  As the Respondent notes, the trial court heard and recorded the defense's objection to the jury array.  *Return*, *Trial Trans.*, Vol. I, Tab K, at 1-32.  Thus, Wiles's assertion that the trial court did not do so is baseless.

influence the emotions of the panel members thereby prejudicing the outcome of both proceedings.

To assert a successful prosecutorial misconduct claim in a habeas proceeding it "is not enough that the prosecutors' remarks were undesirable or even universally condemned.  The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).  This question must be answered in light of the totality of the circumstances in the case.  *Lundy v. Campbell*, 888 F.2d 467, 473 (6th Cir. 1989), *cert. denied*, 495 U.S. 950 (1990).  The prosecutor's comments must be so egregious as to render the trial fundamentally unfair.  *Fussell v. Morris*, 884 F.2d 579 (6th Cir. 1989)(Table), 1989 WL 100857, at *4 (6th Cir. Sept. 1, 1989).

The Sixth Circuit held in *Boyle v. Million*, 201 F.3d 711 (6th Cir. 2000), that a district court should first determine whether the challenged statements were, in fact, improper, and if so, to determine whether the comments were "flagrant," thus requiring reversal.  *Id.* at 717.

> Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were

70

isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of evidence against the accused.

*Id.* (internal quotation marks and citation omitted).

### 1. Ninth ground for relief

The Respondent asserts that the ninth ground for relief is procedurally defaulted because the Ohio Supreme Court reviewed this claim pursuant to a plain error analysis.  While such a review does render a claim procedurally defaulted for federal habeas purposes, a review of the Ohio Supreme Court's opinion reveals that the Ohio Supreme Court did not, in fact, conduct such an analysis.  Although the Ohio Supreme Court observed that Wiles did not object to the prosecutorial statements during closing arguments, it did not state that its review of these claims was for plain error.  Thus, the Court will consider this claim on the merits.

Wiles alleges that, at the close of the guilt phase of trial, the prosecutor improperly used victim impact statements.  Additionally, he contends that the prosecutor called him an "animal," an "ogre," and argued that he had threatened to kill again.  On direct appeal, however, the Ohio Supreme Court found that these comments, viewed in context of the entire guilt phase of trial, did not constitutionally taint that proceeding.  That

71

court held that, while the prosecutor's comments may have been improper, they did not undermine its confidence in the guilt verdict:

> In his twelfth proposition of law, appellant argues that the state introduced improper evidence and engaged in inflammatory argument during the guilt phase of the trial. The evidence in question involved the testimony of Carol Klima, who described her son as "a wonderful boy" with a quiet disposition. She further discussed Mark's hobbies and grades in school. Moreover, the prosecuting attorney described the deceased in closing argument as follows: "A boy, a son that every parent would dream about having. A four-point student and an accomplished writer. A shy and quiet boy * * * who liked computers, who hated violence." The prosecution also evoked the suffering of Charles and Carol Klima: "And the worst repayment of all was the mutilation and the snatching away of the life of their only child."
>
> Appellant correctly contends that this evidence and argument constituted an irrelevant appeal to the emotions. However, in reviewing a bench trial, an appellate court presumes that a trial court considered nothing but relevant and competent evidence in reaching its verdict. The presumption may be overcome only by an affirmative showing to the contrary by the appellant. *State v. Post* (1987), 513 N.E.2d 754, 759. Appellant has failed to identify anything in the record which would suggest that the trial court considered anything but competent, credible evidence in arriving at the verdict. Similarly, there is no indication from the trial court opinion to support the view that the personal qualities of the deceased or the grief suffered by his parents was considered in fixing sentence. *See Booth v. Maryland* (1987), 482 U.S. 496.
>
> Appellant further objects to the characterization of him by the prosecutor as "an ogre * * *, a man-eating monster, a hideous, brutish person * * * " and "an animal." Such invective is highly unprofessional. *See*

> DeFoor, Prosecutional Misconduct in Closing Argument
> (1983), 7 Nova L.J. 443, 465. However, the prosecution
> is entitled to some latitude in summation. *State v.
> Woodards* (1966), 215 N.E.2d 568, 578. " * * * Strong
> characterizations such as 'beast,' 'cruel human
> vulture,' and 'vile creature' have been allowed where
> there is support for them in the record. * * * "
> DeFoor, *supra*, at 464-465.
>
> The language of the prosecuting attorney, while
> strong, is amply supported by the record. Mark Klima
> was stabbed at least ten times, mostly in the back,
> and sustained a total of twenty-four wounds. Moreover,
> no objection was interposed relative to the
> characterizations. Finally, such remarks were directed
> to a three-judge panel, which is presumed to have
> considered only relevant evidence in arriving at its
> decision. *State v. Post*, *supra*. Thus, there exists no
> basis for concluding that such remarks deprived
> appellant of a fair trial.

*State v. Wiles*, 571 N.E.2d at 86-87 (parallel citations

omitted).

The Court finds that the Ohio Supreme Court's application

of its own previous decisions and those of the United States

Supreme Court was not an unreasonable one.  It cited *Booth v.

Maryland*, 482 U.S. 496 (1987), as the controlling Supreme Court

case on the issue of victim impact testimony in which the Court

held that the use of such evidence during the penalty phase of

a capital trial is unconstitutional.  Although the Supreme

Court later overruled *Booth* in *Payne v. Tennessee*, 501 U.S. 808

(1991), the Ohio Supreme Court correctly identified *Booth* as the

controlling precedent at the time it issued its opinion and, in

73

finding that Wiles failed to establish that the trial court used victim impact testimony when reaching its sentencing decision, it applied *Booth* in a reasonable fashion.

The Ohio Supreme Court further found that, while the prosecutor's characterization of Wiles as an "animal" and "ogre" was unprofessional, it was not unsupported by the record. Moreover, it found that because the case was tried before a three-judge panel, rather than a jury, it could presume that the factfinding tribunal considered only relevant evidence when arriving at its finding of guilt. This analysis does not run afoul of any United States Supreme Court precedent. Thus, ground for relief nine is not well-taken.

### 2. Eleventh Ground for Relief

Similar to the previous ground, Wiles contends here that the prosecutor's remarks violated his right to a fair trial. In this ground, however, Wiles asserts that the prosecutorial remarks unfairly influenced the outcome of his sentencing phase proceedings when the prosecutor: (a) made reference to the victim's suffering; (b) asserted that Wiles would commit future violent acts and showed no remorse for killing Mark Klima; (c) made references to crimes for which Wiles was never charged or of which Wiles was never convicted; (d) stated that Wiles was an untruthful person; (e) referred to the brutality of the crime

74

scene and called Wiles less than human; (f) referred to Wiles's drug use; and, (g) noted that Wiles did not provide assistance to the victim and took money from the Klima home.

The Court finds that this claim is procedurally defaulted. When reviewing it, the Ohio Supreme Court noted that defense counsel did not object to any of these statements during closing arguments. It held that the failure to preserve these claims resulted in their waiver except for plain error review. *Wiles*, 571 N.E.2d at 118. As stated above, the Ohio Supreme Court's review of a claim pursuant to a plain error standard does not excuse the default for purposes of federal habeas review. *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).

These claims are without merit in any event. The prosecutor's statements regarding Wiles's lack of remorse, his assertion that Wiles was an untruthful person, and his statement that Wiles did not aid the victim and absconded with the money he took from the Klima home was in rebuttal to the defense's assertions that Wiles was remorseful, that he assisted police, and that he unintentionally killed Mark Klima after Klima attacked him. The prosecution merely used these statements to demonstrate that Wiles's subsequent actions belied his assertions. Thus, these statements were not improper.

75

The Ohio Supreme Court found that the prosecutor's statements regarding the victim's character and suffering did not exceed constitutional limits and that such remarks did not constitute reversible error. *Wiles*, 571 N.E.2d at 119 (citing *State v. Cooey*, 544 N.E.2d 895, 915 (Ohio 1989)).  Additionally, it held that because the trial court was permitted under state law to review a pre-sentence investigation report the defense introduced, the prosecutor's comments regarding crimes for which Wiles was uncharged or unconvicted that were contained in that report were not improper. *Id.*

Wiles's assertion that the prosecution made improper comments regarding the brutality of the crime scene and that Wiles was less than human are without merit because Wiles does not cite to the instances during closing arguments that the prosecutor made such comments.  Upon both the Respondent's and this Court's own review of the prosecutor's closing arguments, it is unclear to what portion of the prosecutor's closing argument Wiles is referring.

Finally, the Court finds no merit in Wiles's assertion of prosecutorial misconduct because the prosecutor referred to him as a "drugger" and a "doper."  As the Ohio Supreme Court observed:

> While such remarks border on irrelevancy, the Supreme
> Court has approved "open and far-ranging argument * *
> *" and observed that "[s]o long as the evidence
> introduced and the arguments made at the pre-sentence
> hearing do not prejudice a defendant, it is preferable
> not to impose restrictions. * * * " *Gregg v. Georgia*
> (1976), 428 U.S. 153, 203-204, 96 S.Ct. 2909, 2939, 49
> L.Ed.2d 859 (plurality opinion).

*Id.* at 89.  The Court finds that this review does not run afoul of any United States Supreme Court precedent.  Thus, this claim lacks merit.

### J. Tenth Ground for Relief - Burden of Proof

Wiles contends that the proper burden of proof to establish guilt in a capital case should be heightened from proof beyond a reasonable doubt to proof beyond all doubt.  Prior to trial, he moved the court to utilize this standard when reaching its decisions.  The Ohio Supreme Court summarily rejected this claim, holding that the proposition of law was overruled based on *State v. Jenkins*, 473 N.E.2d 264(1984)(¶ eight of syllabus).

The United States Supreme Court explicitly rejected this argument in *In re Winship*, 397 U.S. 358, 364 (1970), where it stated that the standard required to convict a criminal defendant is "proof beyond a reasonable doubt."  Thus, the Ohio Supreme Court's opinion is not an unreasonable application of any United States Supreme Court precedent.  Wiles's tenth ground for relief is not well-taken.

77

**K. Twelfth and Twenty-second Grounds for Relief - Use of Non-Statutory Aggravating Factors**

Wiles asserts that, in its sentencing opinion pursuant to Ohio Revised Code § 2929.03(F),[10] the sentencing court utilized non-statutory aggravating factors when reaching its decision to sentence him to death.  Additionally, he claims that in its re-weighing of the trial court's decision, the Eleventh District Court of Appeals used the identical circumstances as the trial court in upholding the trial court's sentence.  Both claims were raised to the Ohio Supreme Court and are preserved for review here.

In its sentencing opinion, the trial court held that, beyond a reasonable doubt, the aggravating circumstances outweighed the mitigating factors.  In so finding, it set forth the following grounds for its decision:

1. We find that the defendant was the principal

---

[10]    That statute states in pertinent part:
              (F) The court or the panel of three judges, when
              it imposes a sentence of death, shall state in a
              separate opinion its specific findings as to the
              existence of any of the mitigating factors set
              forth in division (B) of section 2929.04 of the
              Revised Code, the existence of any other
              mitigating factors, the aggravating
              circumstances the offender was found guilty of
              committing, and the reasons why the aggravating
              circumstances the offender was found guilty of
              committing were sufficient to outweigh the
              mitigating factors.
Ohio Rev. Code § 2929.04(F).

78

offender.

2. We find the defendant entered the private home of the victim for the purpose of committing burglary.

3. We find that the defendant also planned the burglary and had planned the burglary for several days prior to making an unlawful entry, and previously had made an attempt to commit the offense.

4. The defendant stabbed the 15-year-old victim repeatedly and brutally with purpose to kill.

5. The defendant killed the victim for purposes of escaping detection and apprehension for the aggravated burglary.

6. The defendant gave no aid or assistance to the victim and fled the residence with money stolen from the Klima residence.

7. The victim was only 15 years of age and in his own home at the time of the stabbing and killing.

8. The defendant, while relatively youthful, had been previously convicted of aggravated burglary, refused drug and alcohol treatment, displayed defiance of authority, and participated in other criminal activity for which he was not apprehended or convicted. The defendant had been incarcerated in Mansfield Reformatory for approximately one and a half years.

9. The defendant fled the jurisdiction using monies stolen in the burglary of the Klima residence.

10. The Court finds that while the defendant was only convicted of one previous felony, that the nature of the felony makes it a significant criminal conviction.

*Return* Appendix, Vol. II, at 328-29.

The Eleventh District Court of Appeals also independently re-weighed the aggravating circumstances with the mitigating

factors, finding that the sentence of death was appropriate:

Having considered the issues raised in appellant's assignments of error, we now turn to an independent weighing, as required by R.C. 2929.05(A), of the aggravating circumstances and the mitigating factors.

However, first we merge the two specifications in the instant cause, R.C. 2929.04(A)(3) and (7), assigned to the aggravated murder count of appellant's indictment. The resulting aggravated circumstance is R.C. 2929.04(A)(7).

Against this aggravating circumstance, we weigh all mitigating factors indicated by the nature and circumstances of the offense; the history, character and background of appellant; and any of the mitigating factors listed in R.C. 2929.04(B)(1) through (7) which exist in this case.

We find the nature and circumstances of Mark Klima's murder to be heinous as evidenced by: (1) the fact appellant, a man of twenty-two years of age, killed Klima, a boy of fifteen years of age; (2) the fact that appellant was physically larger than Klima who was five foot tall and weighed one hundred pounds; (3) the fact that appellant stabbed Klima at least eleven times in the chest and back with a butcher knife, penetrating vital organs; (4) the fact that Klima's arms and wrists were severely gashed; (5) Klima's face and forehead were battered and bruised; and (6) the knife was left buried in Klima's back.

It should also be noted that, by his burglary of the Klima residence, appellant befriended the Klimas whom he knew and who had earlier employed him on the horse farm. Again, it should be noted that appellant had gone to the farm two days earlier to commit the burglary but lost his nerve when he came upon Mark Klima in the barn.

We find the nature and circumstances of this offense are entitled to no weight in mitigation.

At his sentencing hearing, appellant presented evidence as to his history, character and background.

80

Specifically, he presented evidence of the following alleged mitigating factors: (1) that he turned himself in and gave truthful confessions to the sheriff's deputies; (2) that he was relieved to have confessed and had exhibited regret and remorse for his actions; (3) that he had never initiated violence towards others; (4) that he had a history of drug and alcohol abuse; (5) that he had a troubled family history; (6) that as a child and teenager, he had been active in church affairs; (7) that he had intended to avoid any confrontation with any occupant of the Klima house; (8) that he has an arrested emotional development, often being depressed and anxious; and (9) that he had an excellent history while a youthful prisoner at the Mansfield Reformatory. In our independent review, we find that factors (1) and (2) are entitled to some mitigating weight.

To the weight given the above mitigating factors, we add the weight of the factors set forth in R.C. 2929.04(B)(1) through (7) which are present in this case. We find that factors (1), (2), (3), (5) and (6) are not present and thus are not entitled to any weight.

We find that factor (4) is present in this case. Appellant was twenty-two at the time of his offense, and we assign some, but not much, weight to that factor.

Under factor (7), appellant turned himself in to the police and professed remorse for his acts. We find these things are entitled to little weight as mitigation in this case. By his own admission, he turned himself in to the police in Savannah, Georgia only because he was hungry and out of money. When first interviewed by the Savannah police, he denied having anything to do with the Klima murder. He had earlier lied to the Portage County deputies when he was first questioned about the killing. Also, the remarks in the presence of the corrections officer indicate a lack of remorse for his acts.

Our independent weighing of all the mitigating factors against the aggravating circumstance leads us to the conclusion that the aggravating circumstance outweighs

81

the mitigating factors present in this case beyond a
reasonable doubt.

*State v. Wiles*, No. 1675, 1988 WL 59838, at *7-8 (Ohio Ct. App.
June 3, 1988).

Wiles raised the claims he presents here to the Ohio Supreme
Court, which found they lacked merit.   After thoroughly
examining this claim and conducting an independent review of its
own, the Ohio Supreme Court concluded that Wiles "clearly
adduced a modicum of mitigating evidence," but found that "the
extreme violence employed in the commission of the crime and its
perpetration in the home of the victim lead us to conclude that
the aggravating circumstance outweighs the mitigating factors
beyond a reasonable doubt."   *State v. Wiles*, 571 N.E.2d 97, 124
(Ohio 1991).

The Respondent contends that, to the extent the trial court
and court of appeals used non-statutory aggravating factors in
reaching its sentencing decision, the Ohio Supreme Court's
independent re-weighing of these factors cures any error the
lower courts may have committed. In *Clemmons v. Mississippi*, 494
U.S. 738, 745 (1990), the United States Supreme Court held that
an appellate court's independent re-weighing of aggravating
circumstances with mitigating factors could cure a defect

82

arising from a jury considering a vague or overbroad aggravating factor.

Although Wiles acknowledges that independent review can cure a trial court weighing error in some circumstances, he contends here that the Ohio Supreme Court utilized the identical non-statutory aggravating factors when reaching its independent weighing decision.  Thus, he concludes, it did not cure the error committed by both the trial court and court of appeals.

The Court finds that, in its re-weighing, the Ohio Supreme Court considered the nature and circumstances of the offense when holding that the sentence of death could be upheld. Specifically, it observed that "extreme violence employed" in the murder while the victim was in his home led it to find that the decisions of the courts below were appropriate. *Wiles*, 571 N.E.2d at 124.

The Ohio Supreme Court's reference to the nature and circumstances of the crime was not improper under Ohio law because "[u]nder R.C. 2929.03(F), a trial court or three-judge panel may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors." *State v. Stumpf*, 512 N.E.2d 598 (Ohio 1987)(¶ one of syllabus).  Thus, the Ohio Supreme Court could consider the

83

violence Wiles used in killing Klima to support its weighing decision.

Finally, as the Sixth Circuit has noted,

[t]he United States Supreme Court has held that once a defendant is found eligible for death based on a constitutionally sufficient narrowing circumstance, the sentencer's discretion is virtually unlimited. *See Zant v. Stephens*, 462 U.S. 862, 878-79 (1983). Furthermore, the Supreme Court has also held that consideration of a non-statutory aggravating circumstance, even if contrary to state law, does not violate the Constitution. *Barclay v. Florida*, 463 U.S. 939 (1983).

*Smith v. Mitchell*, 348 F.3d 177, 210 (6th Cir. 2003). As the *Smith* decision demonstrates, the Ohio Supreme Court's re-weighing decision is not clearly contrary to or an unreasonable application of any United States Supreme Court precedent. Accordingly, grounds for relief twelve and twenty-two are not well-taken.

**L. Thirteenth Ground for Relief - Trial Court Consideration of Mitigating Circumstances**

Wiles asserts that the trial court did not consider the mitigation evidence he proffered during the penalty phase hearing. Respondent does not assert that this claim is procedurally defaulted. A habeas court may not re-weigh the mitigating evidence presented during trial. As the Sixth Circuit has held, "[i]n reweighing, a state court effectively vacates the original sentence and resentences the defendant;

84

this process is hardly appropriate in the course of collateral review by a federal court." *Coe v. Bell*, 161 F.3d 320, 334 (6th Cir. 1998). Because Wiles is, in effect, asking this Court to review and determine the effect of mitigating evidence, addressing this claim would involve re-weighing the mitigating evidence. As the *Coe* court dictates, sentencing re-weighing is inappropriate on federal habeas review. Thus, this claim is not well-taken.[11]

### M. Fourteenth and Eighteenth Grounds for Relief - Merging of Aggravating Circumstances

Wiles next asserts that the trial court did not merge two of the aggravating circumstances it found to be in existence, resulting in a sentence that is constitutionally infirm. Wiles raised these claims to the Ohio Supreme Court. Thus, they are not procedurally defaulted and the Court will address them on the merits.

In its sentencing opinion, the trial court found the existence of two aggravating circumstances, Ohio Revised Code §

---

[11]     Even if this were the proper forum to review this claim, it would not be well-taken. Pursuant to the AEDPA, this Court is bound by the factual findings of the Ohio Supreme Court. 28 U.S.C. § 2254(e)(1). On direct appeal, the Ohio Supreme Court found that the trial court properly considered (but assigned little weight to) much of the mitigating evidence Wiles asserts the trial court overlooked. *Wiles*, 571 N.E.2d at 120. Thus, the Court would be bound by the Ohio Supreme Court's factual finding.

2929.04(A)(3)(murder to escape detection of a crime) and Ohio Revised Code 2929.04(A)(7)(murder during an aggravated burglary). Pursuant to Ohio law, the trial court should have merged these specifications because they "arose from the same acts and were committed with the same animus." *State v. Cooey*, 544 N.E.2d 895, 917 (Ohio 1989). The Ohio Supreme Court found on direct appeal, however, that Wiles was not prejudiced by this trial court error because the Eleventh District Court of Appeals' independent re-weighing after merging the aggravating factors cured any defect in Wiles's sentence. *Wiles*, 571 N.E.2d at 115.

The Court finds that the Ohio Supreme Court's decision was not an unreasonable application of any United States Supreme Court precedent. Although no United States Supreme Court case is directly on point, *Clemmons v. Mississippi*, 494 U.S. 738 (1990), offers some guidance. In that case, the jury found that the state established two statutory aggravating circumstances and sentenced the petitioner to death. *Id.* at 742. The Mississippi Supreme Court later invalidated one of the aggravating circumstances as unconstitutionally vague but upheld the death sentence because the appellate court re-weighed the sentencing decision without the invalidated aggravating circumstance and found it appropriate. *Id.* at 743. The United

86

States Supreme Court held that a death sentence could be upheld on appeal even when the jury had considered an invalid or improperly defined aggravating circumstance. The court determined:

> Nothing in the Sixth Amendment as construed by our prior decisions indicates that a defendant's right to a jury trial would be infringed where an appellate court invalidates one or two or more aggravating circumstances found by the jury, but affirms the death sentence after itself finding that one or more valid remaining aggravating factors outweigh the mitigating evidence. Any argument that the Constitution requires that a jury impose the sentence of death or make the findings prerequisite to imposition of such a sentence has been soundly rejected by prior decisions of this Court.

*Id.* at 745 (citations omitted). Moreover, the United States Supreme Court has held that "mere errors of state law" when reviewing death sentences are permissible "unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution." *Barclay v. Florida*, 463 U.S. 939, 957-58 (1983).

Finally, Wiles alleges in the Traverse that his sentence violates the holding of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In that case, the United States Supreme Court held that the Sixth Amendment does not permit a judge to impose a sentence that would exceed the maximum sentence to which the defendant would be exposed if punished pursuant to the facts found by a

jury.  The *Apprendi* decision is inapposite to this case because here the fact finder held that two aggravating circumstances existed.   The court of appeals merged the aggravating circumstances then re-weighed  the remaining aggravating circumstance with the mitigating factors.  Thus, the court of appeals' decision, unlike the holding in *Apprendi*, resulted in a sentence in which a court considered fewer aggravating circumstances than did the fact finder.  Thus, *Apprendi* does not aid Wiles.  Grounds for relief fourteen and eighteen are not well-taken.

### N. Fifteenth, Sixteenth, Seventeenth, and Twenty-third Grounds for Relief - Proportional and Appropriate Death Sentence

In these grounds for relief, Wiles takes issue with the Ohio Supreme Court's proportionality and appropriateness review of death sentences generally as well as how it reviewed his case specifically.  He first asserts that the Ohio courts improperly excluded cases in their review in which the state did not seek the death penalty for an aggravated murder charge, or in which it sought the death penalty but did not obtain it.

A proportionality review is not constitutionally required. *Pulley v. Harris*, 465 U.S. 37, 50-51 (1984).  *See also McQueen v. Scroggy*, 99 F.3d 1302, 1333-34 (6th Cir. 1996), *overruled on other grounds by In re Abdur'Rahman*, 392 F.3d 174 (6th Cir.

88

2004)("There is no federal constitutional requirement that a state appellate court conduct a comparative proportionality review."). By statute, however, Ohio requires the appellate courts to engage in a proportionality review. Under Ohio Revised Code § 2929.05(A):

> In determining whether the sentence of death is appropriate the court of appeals, in a case in which a sentence of death was imposed for an offense committed before January 1, 1995, and the Supreme Court shall consider whether the sentence is excessive or disproportionate to the penalty imposed in similar cases. They shall also review all the facts and other evidence to determine if the evidence supports the finding of the aggravating circumstances the trial jury or the panel of three judges found the offender guilty of committing, and shall determine whether the sentencing court properly weighed the aggravating circumstances the offender was found guilty of committing and the mitigating factors.

Ohio Rev. Code § 2929.05(A).

Because Ohio law requires appellate courts to engage in a proportionality review, the review must be consistent with constitutional requirements. *Kordenbrock v. Scroggy*, 680 F.Supp. 867, 899 (E.D. Ky. 1988), *rev'd on other grounds*, 919 F.2d 1091 (6th Cir. 1990)(citing *Evitts v. Lucey*, 469 U.S. 387 (1985)). Nonetheless, when the state courts have engaged in a proportionality review, the federal habeas court's review is limited. The habeas court is to examine the state's proportionality review only to determine whether the imposition

89

of death on the petitioner is patently unjust or "shocks the conscience; the court is not to second-guess the state court's comparison of other cases in which the death penalty was imposed." *Id.* (citing *Moore v. Balkcom*, 716 F.2d 1511, 1517 (11th Cir. 1983)). *See also Spinkellink v. Wainwright*, 578 F.2d 582, 604 (5th Cir. 1978), *cert. denied*, 440 U.S. 976 (1979)(same).

In *Spinkellink*, the petitioner argued

> that his crime, when compared to other Florida death penalty cases, was insufficiently gruesome or heinous to warrant the death penalty and had highlighted seven other cases in which the Florida Supreme Court had reversed death sentences.  All of these other cases allegedly involved defendants equally or more deserving of the death penalty than he.

*Moore*, 716 F.2d at 1517-18 (quoting *Spinkellink*, 578 F.2d at 604).  The court "condemned a federal case by case analysis of the cases used by the state appellate court in its proportionality review as an unnecessary intrusion on the [state] judicial system." *Id.* (citing *Spinkellink*).  It held:

> A federal habeas court should not undertake a review of the state supreme court's proportionality review and, in effect, 'get out the record' to see if the state court's findings of fact, their conclusions based on a review of similar cases, was supported by the 'evidence' in the similar cases.  To do so would thrust the federal judiciary into the substantive policy making area of the state.

*Id.*  Moreover, when examining an Ohio capital conviction on

habeas review, the Sixth Circuit has stated that, because "proportionality review is not required by the Constitution, states have great latitude in defining the pool of cases used for comparison." *Buell v. Mitchell*, 274 F.3d 337, 369 (6th Cir. 2001). The Court finds here that the state court's decision to impose the death penalty on Wiles does not "shock the conscience." This sub-claim is not well-taken.

Wiles also asserts that Ohio's death penalty is unconstitutional because it does not ensure that death is the only appropriate remedy. The United States Supreme Court rejected an argument similar to this one in *Blystone v. Pennsylvania*, 494 U.S. 299 (1990). In that case, the defendant challenged the constitutionality of the Pennsylvania death penalty statutes, which, similar to Ohio's, require that the jury recommend the death penalty if the aggravating circumstances outweigh the mitigating factors. In upholding this statutory scheme, the *Blystone* Court determined that the statutes were constitutional because they permitted the sentencer "to consider and give effect to any mitigating evidence relevant to a defendant's background and character or the circumstances of the crime." *Id.* at 304-05 (internal quotation marks and citation omitted).

Ohio's death penalty statutes permit the sentencing body to consider all mitigating evidence pursuant to the "catch-all" mitigating factor, Ohio Revised Code § 2929.04(B)(7).[12] Moreover, the Ohio scheme provides for an appropriateness review on direct appeal.  Accordingly, these claims lack merit.

**O. Nineteenth and Twenty-first Grounds for Relief - Unconstitutionality of Death Penalty**

Wiles next takes aim at the structure of Ohio's capital punishment scheme.  He asserts that Ohio's capital punishment scheme is unconstitutional on its face and as applied in his case.  The Respondent does not allege that any of the claims are procedurally defaulted.  Thus, the Court can review these claims on the merits.  In so doing, the Court is not persuaded by any

---

[12] That statute states:

> (B) If one or more of the aggravating circumstances listed in division (A) of this section is specified in the indictment or count in the indictment and proved beyond a reasonable doubt, . . . , the court, trial jury, or panel of three judges shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and all of the following factors:
>
> ***
> (7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death.

Ohio Rev. Code § 2929.04(B)(7).

92

of Wiles's allegations.  In summary fashion, the Court will list

below these allegations, in italics, and thereafter state the

reasons why they are unpersuasive.

- *The Ohio scheme is unconstitutional because the mitigating factors are impermissibly vague.*  The Ohio Supreme Court cogently analyzed this claim on direct appeal, citing relevant United States Supreme Court precedent:

  > In his twenty-second proposition of law, appellant contends that the mitigating factors set forth in R.C. 2929.04(B) are unconstitutionally vague because they "fail to adequately inform the trier of fact what may and may not be considered in mitigation."
  >
  > However, in *Eddings v. Oklahoma* (1982), 455 U.S. 104, the United States Supreme Court held that "the State may not by statute preclude the sentencer from considering any mitigating factor * * *." Although irrelevant evidence may be excluded, *Lockett v. Ohio* (1978), 438 U.S. 586, any attempt to restrict what may be considered in mitigation would be violative of the Eighth and Fourteenth Amendments to the United States Constitution.
  >
  > While appellant cites *Maynard v. Cartwright* (1988), 486 U.S. 356, for the proposition that "sentencing guidelines" must be specific, the decision addressed an unconstitutionally vague aggravating circumstance, not a mitigating factor. Rather, any attempt to limit consideration of any mitigating factor on the basis of vagueness would run afoul of the constitutional imperatives

> recognized in *Eddings v. Oklahoma*, *supra*.
> Appellant's twenty-second proposition of law is
> overruled.

*State v. Wiles*, 571 N.E.2d at 122. The Ohio Supreme
Court's decision did not unreasonably apply any United
States Supreme Court precedent. In fact, it correctly
held that, if the trial court had specified what
constitutes a mitigating factor, it would have run
afoul of several United States Supreme Court holdings.
Thus, this claim has no merit.

- *Ohio's scheme is not the least restrictive means of effectuating deterrence.* The United States Supreme Court addressed this exact point in *Gregg v. Georgia*, 428 U.S. 153 (1976). Noting that imposing criminal punishment is a legislative responsibility, the Court limited its own ability to "require the legislature to select the least severe penalty possible." *Id.* at 175.

- *Ohio's scheme is unconstitutionally arbitrary because it allows for prosecutorial discretion to determine whether to seek a capital indictment.* Once again, the Supreme Court in *Gregg v. Georgia*, 428 U.S. 153 (1976), rejected this argument under a similar death penalty statute, condoning the discretionary system.

- *Ohio's scheme permits the jury to find for a death sentence without first finding that the defendant acted with premeditation and deliberation.* This argument is groundless as Ohio Revised Code § 2903.01(E) requires no person to be convicted of aggravated murder unless he or she is "specifically found to have intended to cause the death of another . . . ." Moreover, the United States Supreme Court sanctioned the use of a criminal state of mind less culpable than intent, *i.e.*, reckless indifference, as an acceptable level of culpability to impose the death penalty. *See Tison v. Arizona*, 481 U.S. 137, 156 (1986)(affirming death sentence of capital defendant who took part in prison escape but was not present when murder of kidnaped family occurred because he possessed a "reckless disregard for human life.").

- *Ohio's scheme is unconstitutional because it fails to establish a standard for determining the existence of*

*mitigating factors.*  While the United States Supreme Court does "require that the record on appeal disclose to the reviewing court the considerations which motivated the death sentence in every case in which it is imposed," *Gardner v. Florida*, 420 U.S. 349, 361 (1977), there is no actual criterion stating that the trial judge or jury must identify and articulate the specific factors used to formulate the decision.  Furthermore, Ohio Revised Code § 2929.03(F) requires that a trial judge make a written finding as to the existence of specific mitigating factors and aggravating circumstances, and why the aggravating circumstances outweigh the mitigating factors.  By making a record of these determinations, the appellate court is able to make an "independent determination of sentence appropriateness."  *State v. Buell*, 489 N.E.2d 795, 807 (Ohio 1986), *cert. denied*, 479 U.S. 871 (1986).  Thus, no constitutional infirmity exists.

- *Ohio's scheme is unconstitutional because it permits the trier of fact to consider aggravating circumstances at the guilt phase.*  The Supreme Court has articulated clearly the constitutional mandates for imposing the death penalty.  In *Lockett v. Ohio*, 438 U.S. 586 (1978), the Court held that any death penalty statute must allow the sentencer to review all mitigating evidence during the penalty phase, thereby fashioning a sentence befitting the individual defendant.  Because death "is so profoundly different from all other penalties," the Court reasoned, it cannot be imposed without individualizing the sentence.  *Id.* at 605.  The Supreme Court further refined the statutory limiting requirement in *Zant v. Stephens*, 462 U.S. 862 (1983).  In that case, the Court concluded that any death penalty statute must narrow the class of death-eligible defendants from those not death eligible.  *Id.* at 177.  Specifically, a state may choose either to legislatively limit the definition of death-eligible crimes, or it may broadly define capital offenses but narrow the defendants who actually receive a death sentence by using aggravating circumstances during the penalty phase.  *Lowenfield v. Phelps*, 484 U.S. 231, 246 (1987).

  Ohio's death penalty scheme complies with these mandates.  First, §§ 2929.04(B) and (C) allow the defendant to present, and the fact finder to consider, all statutorily enumerated mitigating factors.  Moreover, § 2929.04(B)(7) permits a fact finder to consider all

95

mitigating factors in addition to those enumerated in the statute.  Finally, the Ohio death penalty scheme satisfies the *Zant* requirements by demanding the fact finder to find the existence of at least one aggravating circumstance set forth in § 2929.04(A) prior to imposing a death sentence.

- *Ohio's scheme is unconstitutional because it fails to provide the sentencing authority with an option to impose a life sentence when it finds that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt or when it finds only aggravating circumstances exist.*  The Supreme Court rejected the identical argument in *Blystone v. Pennsylvania*, 494 U.S. 299 (1990).

- *Ohio's death penalty is applied in an arbitrary and capricious manner.*  Other than bald assertion, Wiles cites no specifics about the Ohio statutory scheme that substantiates his argument.  More importantly, Wiles does not state why the Ohio courts' application of the death penalty statutes runs afoul of United States Supreme Court jurisprudence.

- *Ohio's scheme is unconstitutional because it imposes the death penalty in a racially discriminatory manner.*  As stated above, according to *McCleskey v. Kemp*, 481 U.S. 279 (1987), a capital defendant cannot evade a death sentence merely by demonstrating the statistical disparity of capital defendants of a particular race.  Instead, a capital defendant must prove that the decision-maker in his or her individual case acted with a discriminatory purpose, and that such actions had a discriminatory effect on the proceeding.  *Id.* at 292.  Wiles has made no such showing in his case.

- *Ohio's scheme is unconstitutional because a jury or three-judge panel is not required to identify and articulate the existence of mitigating factors and aggravating circumstances.*  No such constitutional mandate exists.  Moreover, as stated above, Ohio Revised Code § 2929.03(F) requires that a trial judge make a written finding as to the existence of specific mitigating factors and aggravating circumstances and why the aggravating circumstances outweigh the mitigating factors.  By making a record of these determinations, the appellate court is

96

able to make an "independent determination of sentence appropriateness." *State v. Buell*, 489 N.E.2d 795, 807 (Ohio 1986), *cert. denied*, 479 U.S. 871 (1986).

- *The death penalty violates the Eighth Amendment prohibition against cruel and unusual punishment.* This argument was rejected in *Gregg v. Georgia*, 429 U.S. 875 (1976)(holding death penalty *per se* not constitutionally barred).

- *Ohio's scheme is unconstitutional because it fails to require that the State prove the absence of any mitigating factors.* This argument was specifically rejected in *Walton v. Arizona*, 497 U.S. 639, 649–50 (1990). There the Supreme Court held that a death penalty scheme requiring the defendant to establish mitigating factors by a preponderance of evidence is constitutionally acceptable burden shifting.[13]

- *Ohio's scheme is unconstitutional because it provides an inadequate proportionality review.* This argument was

---

[13]    This aspect of the *Walton* holding is unaltered by the Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2002). In that case, the Court overruled *Walton* because it found *Walton* irreconcilable with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), a case in which the Court held that the Sixth Amendment does not permit a judge to impose a sentence that would exceed the maximum sentence to which the defendant would be exposed if punished pursuant to the facts found by a jury. Thus, because *Walton* found Arizona's capital sentencing constitutional even though it permitted a judge alone to find aggravating factors and impose a death sentence, the *Ring* Court overruled it. The Court limited its holding, however, overruling *Walton* only "to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty." *Ring*, 536 U.S. at 609. Consequently, the portion of *Walton* finding it permissible for the defendant to be required to proved the existence of mitigating factors by a preponderance of the evidence remains intact.

raised and addressed in Wiles's fifteenth ground for relief.  The Court will not readdress it here.

- *Ohio's scheme is unconstitutional because it fails to require proof beyond all doubt.* The Court addressed this argument in Wiles's tenth ground for relief.  It will not readdress it here.

- *Ohio's scheme is unconstitutional because one of the aggravating factors for capital felony murder merely repeats an element of the crime.*[14]  The Ohio death penalty comports with Supreme Court jurisprudence that requires a statutory scheme to limit the class of death-eligible defendants.  Moreover, this "double counting" system was upheld in *Lowenfield v. Phelps*, 484 U.S. 231, 246 (1987). *See also State v. Jenkins*, 473 N.E.2d 264 (Ohio 1984)(noting that under Ohio Revised Code § 2929.04(A)(7), a state must not only prove that the defendant caused the death of another to establish the aggravating circumstance, but it also must prove that the defendant was the principal offender in the commission of the aggravated murder, or that the aggravated murder was committed with prior calculation and design).  This additional factor complies with the narrowing prerequisites set forth in *Lowenfield*.

**P. Twentieth Ground for Relief - Trial court failed to explain weighing process**

Wiles contends that the trial court failed to explain its weighing of the aggravating circumstances with the mitigating factors, disregarding the requirements of Ohio Revised Code

---

[14]    Wiles contends that one of the statutory aggravating circumstances, Ohio Rev. Code § 2929.04(A)(7), duplicates the statutory definition of felony murder, Ohio Rev. Code § 2903.01(B).  This duplication, Wiles argues, demonstrates the failure of the Ohio statutory scheme to narrow the class of death-eligible defendants.

§2929.03(F) thereby.[15]    Wiles raised this issue to the Ohio Supreme Court on direct appeal.  That court addressed it on the merits. Consequently, this Court may conduct a similar review.

When reviewing this claim on direct appeal, the Ohio Supreme Court found no defect in the trial court's sentencing opinion. It held:

> In his twenty-third proposition of law, appellant contends that the trial court failed to adequately explain why the aggravating circumstances were sufficient to outweigh the mitigating factors.  While appellant concedes that the trial court listed ten reasons why the aggravating circumstances prevailed, he nevertheless argues that the listings did not constitute a meaningful weighing.
>
> R.C. 2929.03(F) requires a trial court to "state * * * the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors * * *. This function was fully performed by the trial court in the case at bar.  Appellant's twenty-third proposition of law is overruled.

---

[15]    As stated above, that statute states in relevant part:
>       (F) The court or the panel of three judges, when it imposes a sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors.

Ohio Rev. Code § 2929.03(F).

*Wiles*, 571 N.E.2d at 121.

Wiles cannot assert that the Ohio Supreme Court's opinion was contrary to or an unreasonable application of United States Supreme Court precedent.  There is no precedent that stands for the proposition that the Constitution requires a capital sentencer to articulate its weighing process when imposing sentence.  Consequently, Wiles's claim appears to be one asserting a state-law violation.  Federal habeas courts may not correct errors of pure state law.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  Thus, this claim is not well-taken.

**Q. Twenty-fourth Ground for Relief - Faulty Indictment**

Wiles next asserts that the indictment for his case was faulty because it did not contain the grand jury foreman's signature, as required under Ohio law.  Wiles has preserved this claim for federal habeas review by raising it on direct appeal to the Ohio Supreme Court.  That court found, however, that this claim lacked merit.  It held:

> In his twenty-seventh proposition of law, appellant contends that the indictment is invalid because it does not bear the signature of the grand jury foreman.
>
> During the course of these proceedings, the portion of the indictment originally transmitted to this court containing the foreman's signature was misplaced. This missing page has since been located.
>
> In the meantime, to remedy this apparent deficiency, the state was permitted to supplement the record by

100

supplying a certified copy of the indictment. *See* 702, 547 N.E.2d 988.

We are unable to determine when this page containing the signature became detached and misplaced. However, regardless of when the detachment occurred, we cannot agree that this apparent irregularity warrants reversal. If the signature was properly attached prior to trial, then the indictment did not lack a signature and no defect existed. If the signature page was misplaced before trial, appellant has failed to preserve any error by timely objection. Appellant may not withhold a timely objection at trial in the hopes of obtaining a favorable outcome on the merits and attempt to raise the error on review when the desired result fails to materialize. *See Wainwright v. Sykes* (1977), 433 U.S. 72, 89-90. Appellant's twenty-seventh proposition of law is overruled.

*Wiles*, 571 N.E.2d at 121-22 (parallel citations omitted).

The Court finds that the Ohio Supreme Court's decision on this issue was not clearly contrary to or an unreasonable application of any United States Supreme Court precedent, principally because it involves a question of state law.  Thus, this Court need not review this claim further.  Wiles's twenty-fourth ground for relief is not well-taken.

### R. Twenty-fifth Ground for Relief - Gruesome Photographs

Wiles contends that the trial court's admission of gruesome photographs prejudiced that proceeding.  The Respondent asserts that this claim is procedurally defaulted because Wiles failed to object to the admission of any photographs during trial.  On direct appeal, the Ohio Supreme Court reviewed this claim

101

pursuant to a plain error standard of review.  As stated above, a plain error  review does not excuse a finding of procedural default.  Accordingly, the Court finds this claim to be procedurally defaulted.

This claim lacks merit in any event.  Upon review by the Ohio Supreme Court, that court found no merit to Wiles's gruesome photograph claim.  It held:

> In his twenty-eighth proposition of law, appellant objects to the admission of numerous gruesome autopsy photographs of the victim. The photographs are clearly gruesome and repetitive. *State v. Maurer* (1984), 473 N.E.2d 768, paragraph seven of the syllabus. However, appellant failed to object to the admission of such exhibits at trial.
>
> Moreover, the probative value of such evidence is beyond question. The photographs reveal the number and location of the stab wounds and are thus relevant to the issue of intent. Accordingly, their admission cannot be considered plain error. Appellant's twenty-eighth proposition of law is overruled.

*Wiles*, 571 N.E.2d at 121 (parallel citations omitted).  This decision was not clearly contrary to any United States Supreme Court precedent.

Moreover, the admission of the photographs Wiles alleges are prejudicial was within the sound discretion of the trial court. Admission of gruesome photographs in a murder case typically does not justify collateral relief, even if cumulative and likely to inflame the jury. *Gonzalez v. DeTella*, 127 F.3d 619,

102

621 (7th Cir. 1997), *cert. denied*, 523 U.S. 1032 (1998).  There
is no evidence in this case, other than Wiles's mere allegation,
that the photographs introduced violated his right to a fair
trial.  Moreover, there was ample evidence adduced at trial of
Wiles's guilt to provide this Court with confidence that their
admission did not prejudice the outcome of his trial.  The Ohio
Supreme Court correctly denied this claim on direct appeal.

### S. Twenty-sixth and Thirty-fourth Grounds for Relief - Cumulative Error

In these grounds, Wiles alleges that, because the trial
court was privy to numerous inflammatory and prejudicial
statements that were not ultimately admitted into evidence, its
conviction and sentencing decisions were tantamount to
accumulated error.  He also asserts that, to the extent this
Court finds error regarding other claims in his Petition, these
errors can accumulate and entitle him to relief.

In reviewing Wiles's cumulative error claim on direct
appeal, the Ohio Supreme Court found that it lacked merit.
*Wiles*, 571 N.E.2d at 123.  The Court finds no precedent that
would cause it to upset this ruling.  Furthermore, accumulated
errors are not tantamount to reversible error "if the
prosecution can prove beyond a reasonable doubt that a
constitutional error did not contribute to the verdict."

103

*Satterwhite v. Texas*, 486 U.S. 249, 256 (1988).  If error occurred, but without constitutional significance, then the error is deemed harmless and the verdict sound.  *Id.*  Wiles's cumulative error claims lack merit because, for the reasons set forth elsewhere in this Opinion, his individual claims lack merit.

### T. Twenty-seventh, Twenty-eighth, Twenty-ninth, Thirtieth, Thirty-first, Thirty-second, and Thirty-third Grounds for Relief - Post-Conviction Relief

In these grounds for relief Wiles complains about various aspects of his post-conviction relief proceedings and alleges that the Ohio post-conviction system is generally infirm.  First, Wiles claims that the post-conviction court erred in failing to strike the state's untimely summary judgment filing.  Wiles next alleges that the trial court improperly used the doctrine of *res judicata* in its decision.  He further contends that the state's summary judgment motion was written by an attorney who represented him on direct appeal.  Thus, he asserts, this attorney had a conflict of interest when he wrote the brief.  He complains that the post-conviction court did not provide him with an evidentiary hearing and that it granted the state's summary judgment motion without allowing him an opportunity to oppose it.  He next complains that the trial court erred when it denied the merits of his post-conviction

104

petition. Finally, he alleges that Ohio's post-conviction system is not an adequate corrective process.

The Court declines to address the merits of these claims. A habeas forum is an improper forum in which to grant Wiles relief. Post-conviction proceedings are civil rather than criminal proceedings, hence there can be no constitutional violation at this juncture of appeal. *Murray v. Giarratano*, 492 U.S. 1, 13 (1989). Wiles fails to articulate any infringement for which a federal habeas corpus court can grant relief. *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986)("[C]ourts have concluded . . . that the writ is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings . . . because the claims address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration."). Although "the result of the habeas petition need not necessarily be reversal of the conviction . . . the petition must directly dispute the fact or duration of the [petitioner's] confinement." *Id.* at 248 (citation omitted). Even if the Court were to consider the merits of Wiles's claims, it would not serve to refute or reduce

Wiles's conviction or sentence.  Consequently, these claims are not well-taken.[16]

### U. Thirty-fifth Ground for Relief - Ineffective Assistance of Appellate Counsel

In this ground for relief, Wiles contends that his appellate counsel were ineffective.  Although he contends that "appellate counsel failed to raise several meritorious assignments of error" on direct appeal, *Traverse* at 103, he does not state with specificity what arguments appellate counsel should have raised.  Curiously, the Respondent asserts that this claim is not procedurally defaulted because "it could not have been raised in state court." *Return*, at 134.  The Court finds, however, that it cannot address the defaulted status of this claim because Wiles proffers no grounds upon which he asserts it.  Without providing the Court with these basic allegations, the Court

---

[16]  The Court notes, moreover, that Wiles raised each of these claims to the Eleventh District Court of Appeals during his post-conviction proceedings. While that court initially remanded the case for the trial court to hold a hearing regarding the attorney conflict of interest issue, upon subsequent appeal it found, pursuant to state law, that none of the claims were meritorious. *State v. Wiles*, No. 99-P-0109, 2001 WL 435397, at *6-7 (Ohio Ct. App. Apr. 27, 2001).

106

cannot ascertain whether Wiles raised this claim during his *Murnahan* proceeding.[17]  Moreover, the Court finds that because Wiles fails to state with specificity the grounds on which he asserts ineffective assistance of appellate counsel, it is too vague for the Court to address on the merits.

## VIII. Conclusion

The Sixth Circuit has held that a district court need not wait until a habeas petitioner moves for a Certificate of Appealabilty (hereinafter "COA") before issuing a COA for claims raised in the petition.  *Castro v. United States*, 310 F.3d 900 (6th Cir. 2002).  There, the court reasoned that, because a district court that has recently denied a writ of habeas corpus will have "an intimate knowledge of both the record and the relevant law and could simply determine whether to issue the certificate of appealability when [it] denies the initial petition," it stands to reason that the proper time to determine whether to grant a COA is at the conclusion of the opinion

---

[17]   The Court observes, however, that the Eleventh District Court of Appeals found after reviewing Wiles's application to reopen that none of his claims were well-taken.  *State v. Wiles*, No. 1675, slip op. (Ohio Ct. App. Aug. 9, 2002)

107

granting or denying the writ.  *Id.* at 901 (internal quotation marks and citations omitted).

Furthermore, in two other decisions, the Sixth Circuit determined that neither a blanket grant nor a blanket denial of a COA is an appropriate means by which to conclude a capital habeas case as it "undermine[s] the gate keeping function of certificates of appealability, which ideally should separate the constitutional claims that merit the close attention of counsel and this court from those claims that have little or no viability." *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001); *see also Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001)(remanding motion for certificate of appealability for district court's analysis of claims).  Thus, in concluding this Opinion, it is now appropriate to determine whether to grant a COA as to any of the claims Wiles presented in his Petition pursuant to 28 U.S.C. § 2253.

That statute states in relevant part:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court
>
> * * *

> (2) A certificate of appealability may issue
> under paragraph (1) only if the applicant has
> made a substantial showing of the denial of a
> constitutional right.

28 U.S.C. § 2253. This language is identical to the requirements set forth in the pre-AEDPA statutes, requiring the habeas petitioner to obtain a Certificate of Probable Cause. The sole difference between the pre- and post-AEDPA statutes is that the petitioner now must demonstrate he was denied a *constitutional* right, rather than the federal right that was required prior to the AEDPA's enactment.

The United States Supreme Court interpreted the significance of the revision between the pre- and post-AEDPA versions of the statute in *Slack v. McDaniel*, 529 U.S. 473 (2000). In that case, the Court held that § 2253 was a codification of the standard it set forth in *Barefoot v. Estelle*, 463 U.S. 880 (1983), but for the substitution of the word "constitutional" for "federal" in the statute. *Id.* at 483. Thus, the Court determined that

> "[t]o obtain a COA under § 2253(c), a habeas prisoner
> must make a substantial showing of the denial of a
> constitutional right, a demonstration that, under
> *Barefoot*, includes showing that reasonable jurists
> could debate whether (or, for that matter, agree that)
> the petition should have been resolved in a different
> manner or that the issues presented were "'adequate to
> deserve encouragement to proceed further.'"

*Id.* at 483-4 (quoting *Barefoot*, 463 U.S. at 893 n.4).

The Court went on to distinguish the analysis a habeas court must perform depending upon its finding concerning the defaulted status of the claim. If the claim is not procedurally defaulted, then a habeas court need only determine whether reasonable jurists would find the district court's decision "debatable or wrong." *Id.* at 484. A more complicated analysis is required, however, when assessing whether to grant a COA for claims the district court has found are procedurally defaulted. In those instances, the Court opined, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (emphasis supplied).

After taking the above standard into consideration, the Court finds that none of Wiles's claims merit certification for appeal. The Court's reasoning is set forth below.

No COA will issue for Wiles's first and second grounds for relief ("other acts" evidence). As stated in the Opinion, the Ohio Supreme Court's findings regarding the panel's ability to segregate the charges, as evidenced by its dismissal of Count Three of the indictment, indicated that no prejudice inured to Wiles through the prosecution's introduction of evidence that

110

Wiles previously had burglarized the Klima home.  Similarly, the Ohio Supreme Court reasonably held that even if the panel had considered the prior burglary in its sentencing decision, its consideration of prior charges, even those for which Wiles was acquitted, was permissible.  No jurist of reason would disagree with this Court's findings on these issues.

The Court finds that reasonable jurists would not debate its decision to deny claims three and four (trial court's admission of Officer Jirousek's testimony).  As stated above, the admission of this testimony did not render Wiles's trial unfair because there was no risk that its admission could have led to the conviction of an innocent person.  No reasonable jurist would disagree.

The Court will not issue a COA for Wiles's fifth ground for relief.  The Ohio Supreme Court identified *Miranda v. Arizona*, 384 U.S. 436 (1966), as the controlling United States Supreme Court precedent on the issue of custodial interrogation.  In compliance with the *Miranda* holding, the Ohio Supreme Court held that Wiles was not entitled to counsel during the Savannah Police Department's interrogation of him.  The Ohio Supreme Court's application of this United States Supreme Court precedent was, unequivocally, a reasonable one.

Also undebatable is the Court's decision to deny grounds for relief six and 36 (insufficient evidence). The Court's finding that, *inter alia*, Wiles's confession to the murder of Mark Klima constitutes sufficient evidence that, when viewed in a light most favorable to the prosecution, could support Wiles's conviction is not debatable among jurists of reason. Accordingly, the Court will not issue a COA for these claims.

Reasonable jurists would not debate the Court's decision to deny Wiles's seventh ground for relief (admission of hearsay testimony). As stated above, Wiles did not object to Carol Klima's testimony when the state proffered it during trial. Thus, Wiles failed to preserve this claim on direct appeal. No jurist of reason would find that this claim is not procedurally defaulted.

Similarly, no reasonable jurist would debate the defaulted status of Wiles's eighth ground for relief (trial court failure to record all proceedings), and ninth and eleventh grounds for relief (prosecutorial comments). Wiles's first sub-claim of ground eight, and grounds nine and eleven are defaulted because he failed to object during trial. The remaining two sub-claims of ground eight are procedurally defaulted because Wiles failed to raise them at any juncture in his state court proceedings. Thus, they are unequivocally procedurally defaulted.

112

No COA will issue for claim ten (trial court denial of motion for burden of proof to be beyond all doubt).  The Ohio Supreme Court's decision to deny this claim comports with *In Re Winship*, 397 U.S. 358, 364 (1970), the controlling United States Supreme Court precedent on this issue.  No reasonable jurist would disagree.

All reasonable jurists would agree with this Court's decision to deny grounds for relief 12 and 22 (trial court consideration of non-statutory aggravating factors).  As stated above, the Ohio Supreme Court's re-weighing of the trial court and court of appeals' sentencing findings cured any defects.  Moreover, the Sixth Circuit has held that a state court's consideration of a non-statutory aggravating circumstance, even if contrary to state law, is not a constitutional violation if the defendant is eligible to receive the death penalty.  *Smith v. Mitchell*, 348 F.3d 177, 210 (6th Cir. 2003).  No jurist of reason would disagree with the Court's decision based on the *Smith* holding.

The Court will not issue a COA for claim 13 (trial court's consideration of mitigating circumstances).  As the Court held in its Opinion, Wiles is essentially requesting that this Court re-weigh the aggravating circumstances against the mitigating

factors.  A habeas court may not perform this type of review.
No reasonable jurist would find to the contrary.

Reasonable jurists also would not debate the Court's decision to deny claims 14 and 18 (trial court failure to merge aggravating circumstances).  The Ohio Supreme Court's finding that the court of appeals had cured any trial court defect when it merged the aggravating circumstances before independently re-weighing the sentence was reasonable.  Thus, no COA will issue for these claims.

No COA will issue for claims 15, 16, 17, 19, 21, and 23. (appropriateness, proportionality, and unconstitutionality of the death penalty).  These claims are raised almost *pro forma* in capital habeas petitions but are routinely denied.  No reasonable jurist would find that they have merit.

This Court's decision to deny claim 20 (trial court's § 2929.03(F) opinion insufficient) is not debatable.  The Ohio Supreme Court found that the trial court acted in accordance with the statute in its sentencing opinion.  Because this is a state law claim, no jurist of reason would conclude that a habeas court should review this claim.  Thus, the Court will not issue a COA for it.

The Court will not issue a COA for claim 24 (faulty indictment) because it cannot find that the Ohio Supreme Court's

114

holding that the indictment was not faulty is an unreasonable application of any United States Supreme court precedent. No jurist of reason would disagree.

The Court will not issue a COA for claim 25 (gruesome photographs). Similar to the unconstitutionality of the death penalty claims, this ground for relief is routinely raised in capital habeas cases yet it lacks merit. Reasonable jurists would agree.

Because the Court found that no error occurred during Wiles's trial and appeal, reasonable jurists would not debate the Court's finding that claims 26 and 34 (cumulative error) are without merit. No COA will issue for these claims.

The Court also will not issue a COA for claims 27, 28, 29, 30, 31, 32, and 33 (defects in post-conviction process or post-conviction court's decisions). A habeas court is unequivocally an improper forum in which to raise state post-conviction relief issues because any improper occurrences do not constitute constitutional violations. No reasonable jurist would disagree.

No reasonable jurist would disagree with the Court's decision to deny claim 35 (ineffective assistance of appellate counsel). Wiles's vague assertions that appellate counsel acted unreasonably by failing to raise unnamed issued on appeal is too obscure to merit habeas review.

Finally, the Court has observed from prior capital habeas cases that counsel for the losing party routinely file a motion for reconsideration, and no such motion in other cases yet having been found to have been well-taken.  Counsel in this case are advised that attorneys in capital cases are not immune from sanctions that should be and are imposed on counsel who file unfounded motions for reconsideration.  If counsel file an unsuccessful motion for reconsideration in this, as in any case, they may be required to reimburse the opposing party for the attorneys' fees and expenses incurred in responding to such motions.  *See*, e.g., *Baston v. Bagley*, 282 F.Supp.2d 665, 673 (N.D. Ohio 2003).  Where counsel filing an unsuccessful motion for reconsideration are otherwise to be compensated under the Criminal Justice Act, said counsel may not be compensated for the time expended in preparing and filing such motions.

For the reasons stated in this Opinion, this Court finds none  of the claims asserted in Wiles's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 are well-taken. Accordingly, Wiles's request for habeas corpus relief is denied. The Petition is hereby dismissed.

116

The Court hereby denies a certificate of appealability pursuant to 28 U.S.C. § 2253(c) for the reasons set forth in the above certificate of appealability analysis.

IT IS SO ORDERED.

/s/ Paul R. Matia
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

A copy of the foregoing Memorandum of Opinion and Order was filed electronically this 18th day of May, 2005.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Paul R. Matia
UNITED STATES DISTRICT JUDGE